CENTRAL NEW YORK TELEPHONE AND TELEGRAPH COMPANY,
Respondent, *v.* CHARLES S. AVERILL et al., Appellants.
(Equity Suit.)

Contracts in restraint of trade — telegraph and telephone com-
panies are public service corporations and cannot enforce con-
tracts restricting subscribers from putting competitive systems
in their premises — when contract not invalid by reason of
illegality in part.

While a contract in general restraint of trade is deemed illegal and void,
the law permits contracts in partial restraint of trade, under some cir-
cumstances, where they are not unreasonable and are supported by
sufficient consideration.

But where the business to which the contract relates is of such a charac-
ter that it cannot be subjected even to the partial restraint, which is con-
templated, without injury to the public interest, then such partial
restraint cannot be tolerated.

Telegraph and telephone companies are to be deemed public service cor-
porations, affected by a public interest, and hence contracts tending to
restrict the free and general use of their lines are invalid, since the
ordinary rule that contracts in partial restraint of trade are not invalid
does not apply to corporations engaged in a public business and in
furnishing that which is a matter of public concern.

The general rule is that where you cannot sever the illegal from the legal
part of a covenant, the contract is altogether void; but where you
can sever them, whether the illegality be created by statute or by the
common law, you can reject the bad part and retain the good.

While a telephone company may adopt every proper expedient to enlarge
its own business, this does not include the right to pursue a policy of
exclusion which is distinctly injurious to the public by restricting their
circle of communication by telephone. It matters not that the customer
may be willing to agree to exclude others, or that the contract to do so
is supported by a sufficient consideration as between the parties. The
evil in such an agreement is its antagonism to the interests of the public.

In an equity suit, where there is no controversy as to the facts and they
have all been judicially ascertained and established in the form of find-
ings, there is no occasion to send the case back for a new trial and thus
put the parties needlessly to further labor and expense.

The parties entered into a written contract for the rendition of telephone
service by plaintiff in defendant's hotel, including the maintenance of a
private hotel telephone exchange therein for a period of years. The
contract, after providing that the apparatus placed in the hotel in pur-

suance of its terms should remain the property of the telephone company, further stipulated "that no instruments or wires other than those furnished by the first party are to be placed or maintained in said hotel or connected with or maintained in connection with said switchboard, apparatus or fixtures, and that said instruments, apparatus, line or fixtures of the first party are not to be connected with or used in connection with any exchange, office or telephone, except those of the first party, or its connections, and only by lines connecting said switchboard with the company's office and switchboard as within provided." This action is brought to restrain defendants from introducing any other telephone system in their hotel and from discontinuing and abandoning the use of the exchange therein equipped by plaintiff.

*Held, first,* that the clause providing for the exclusive use of the plaintiff's telephone is against public policy and, therefore, void, and that plaintiff cannot prevent defendants from admitting other telephone systems or placing other telephone exchanges in their premises; *second,* that the invalidity of such exclusive clause does not avoid the whole contract; *third,* that the plaintiff can lawfully insist that defendants shall retain and continue to employ its telephone exchange and telephone system and refrain from any adverse interference therewith; *fourth,* that defendants are under a legal obligation to comply with every portion of their contract except that portion which relates to the exclusion of other telephones. (*Lough* v. *Outerbridge,* 143 N. Y. 271, distinguished.)

*Central N. Y. Tel. & Tel. Co.* v. *Averill,* 129 App. Div. 752, modified.

(Argued May 3, 1910; decided June 14, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 20, 1909, reversing a judgment in favor of defendants entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. H. Cowie* for appellants. The exclusive clause of the contract is invalid because opposed to public policy. (*Cohen* v. *B. & J. E. Co.,* 166 N. Y. 292 ; *Atchison* v. *Mallon,* 43 N. Y. 147 ; *Hackett Case,* 105 Ind. 250 ; *Smith* v. *G. & S. Tel. Co.,* 42 Hun, 454 ; *People ex rel.* v. *H. R. Tel. Co.,* 19 Abb. [N. C.] 466 ; *Sterne* v. *M. Tel. Co.,* 19 App. Div. 316 ; *People* v. *Budd,* 117 N. Y. 1 ; *Express Co.* v. *Caldwell,* 21

9

Wall. 264; *P. Tel. Co.* v. *W. U. Tel. Co.*, 96 U. S. 1; *Telegraph Co.* v. *Texas*, 105 U. S. 460.) A corporation engaged in a business which affects public interest cannot enforce regulations or contractual provisions which tend to destroy competition or discriminate. (*State ex rel. Payne* v. *Tel. Co.*, 8 Am. El. Cas. 863; *State* v. *Tel. Co.*, 7 Am. El. Cas. 838; *Gibbs* v. *B. & G. Co.*, 130 U. S. 396; *C. & P. T. Co.* v. *B. & O. T. Co.*, 66 Md. 399; *State ex rel. Cable Co.* v. *D. & A. Tel. Co.*, 47 Fed. Rep. 633; *State* v. *Tel. Co.*, 23 Fed. Rep. 539; *Trust Co.* v. *R. R. Co.*, 6 Am. El. Cas. 171.; *W. U. Tel. Co.* v. *A. U. Co.*, 65 Ga. 160; *St. L. & C. R. R. Co.* v *Postal Co.*, 173 Ill. 537; *W. U. Tel. Co.* v. *B. & S. U. Ry. Co.*, 11 Fed. Rep. 1; *W. U. Tel. Co.* v. *B. & O. Co.*, 19 Fed. Rep. 660.) If the exclusive clause is void the whole contract is void, and no enforceable rights arise thereunder in favor of plaintiff. (*S. C. Bank* v. *King*, 44 N. Y. 87; *Knowlton* v. *C. & E. S. Co.*, 57 N. Y. 518; *Munson* v. *Magee*, 22 App. Div. 333; *Thomson* v. *Thomson*, 7 Ves. 470; *Arnot* v. *P. & E. C. Co.*, 68 N. Y. 558; *Unckles* v. *Colgate*, 148 N. Y. 529; *Pollak* v. *Gregory*, 9 Bosw. 116; *Belding* v. *Pitkins*, 2 Caines, 147; *Tylee* v. *Yates*, 3 Barb. 222; *Barton* v. *Port Jackson Co.*, 17 Barb. 397; *Seneca Co. Bank* v. *Lamb*, 26 Barb. 595; *Hooker* v. *Vandewater*, 4 Denio, 349.)

*Edwin Nottingham* for respondent. The contract between plaintiff and defendants was voluntarily entered into for an adequate consideration, and the question whether plaintiff might have required defendants to agree that they would not employ the service of any other telephone company as a condition of receiving service from the plaintiff is not here. (*Del. & A. T. Co.* v. *P. T. Co.*, 3 U. S. App. 30; *Express Cases*, 117 N. Y. 1; *People* v. *Tel. Co.*, 166 Ill. 15.) It is not an objection to this contract that its execution tends to exclude plaintiff's competitors from the field, or from the particular part of the field affected by the contract, as that is the natural and necessary result of competition, not only in the telephone business, but in all other kinds of business; it is a

legitimate kind of competition, and offends against no law. (*Lough* v. *Outerbridge*, 143 N. Y. 271; *Wood* v. *Whitehead Bros. Co.*, 165 N. Y. 551; *Oakes* v. *C. W. Co.*, 143 N. Y. 430; *Leslie* v. *Lorillard*, 110 N. Y. 519; *D. M. Co.* v. *Roeber*, 106 N. Y. 473.) The rule contended for by plaintiff would unduly restrain the liberty of contract, which is the right of every person in this state, whether individual or corporate, and was the right of the parties to this action when this contract was made. (*D. M. Co.* v. *Roeber*, 106 N. Y. 482; *Leslie* v. *Lorillard*, 110 N. Y. 519.) The public has no interest in the contract here which the law recognizes, or in a legal sense. Assuming it to be a fact that plaintiff is engaged in a public service, so called, that its business is affected by a public interest, that does not give the public an interest in this contract, and the contract is not against public policy. (*B. E. V. R. R. Co.* v. *N. V. R. Co.*, 171 Penn. St. 284.) Defendants' contention that there can be no restraint whatever in contracts for telephone service, even though such restraint inures to the benefit of the individual assenting to it, and however valuable the consideration such individual receives therefor, is untenable. (*D. M. Co.* v. *Roeber*, 106 N. Y. 473; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Lough* v. *Outerbridge*, 143 N. Y. 283; *Ruton* v. *Everett*, 35 App. Div. 414; *Hodge* v. *Sloan*, 107 N. Y. 248; *Nat. D. Co.* v. *C. C. Imp. Co.*, 86 Wis. 352; *E. Q. Co.* v. *Creter*, 36 Misc. Rep. 698; *U. S.* v. *Freight Assn.*, 166 U. S. 290; *C., S. L. & N. O. R. R. Co.* v. *P. S. C. Co.*, 130 U. S. 79; *O. S. N. Co.* v. *Winsor*, 20 Wall. 64.)

WILLARD BARTLETT, J. This is a suit in equity for an injunction to restrain the defendants from permitting the introduction of any other telephone system except that furnished by the plaintiff corporation in the Yates Hotel in the city of Syracuse. On August 18, 1902, the parties entered into a written contract for the rendition of telephone service in the hotel by the plaintiff, including the maintenance of a private hotel telephone exchange therein for a period of nine years. The contract contained the ordinary subscriber's

agreement such as is in common use by telephone companies, but the only part which it is necessary to consider on the present appeal is a provision, which for convenience I shall call the exclusive clause, reading as follows :

" It is understood and agreed by both of the parties hereto that the switchboard, apparatus, wires, cables and fixtures furnished under this contract shall be and remain the property of said Central New York Telephone and Telegraph Company, and that the instruments and apparatus are placed in said Yates Hotel for the purpose herein named, and that no instruments or wires other than those furnished by the first party are to be placed or maintained in said hotel or connected with or maintained in connection with said switchboard, apparatus or fixtures, and that said instruments, apparatus, line or fixtures of the first party are not to be connected with or used in connection with any exchange, office or telephone, except those of the first party, or its connections, and only by lines connecting said switchboard with the company's office and switchboard as within provided."

There was also a provision in the contract under which the defendants claimed the right to terminate it by giving thirty days' written notice to the plaintiff that they desired so to do. It is not necessary to discuss this provision further than to say that the trial judge decided that it did not give the defendants the right which they claimed to terminate the contract.

The telephone system of the plaintiff and the private hotel telephone exchange were duly installed in the Yates Hotel under the contract, and no controversy appears to have arisen under the contract until about the time of the commencement of this action in May, 1906, when another telephone system became available to the inhabitants of Syracuse. The defendants thereupon manifested an intention to introduce this other system in the Yates Hotel, and their threat to do so led to the institution of the present action, in which the plaintiff sought to enforce the exclusive clause in the contract which has already been quoted. The defendants pleaded a termination of the contract by reason of the service of a thirty days'

notice thereunder, and also that the contract was invalid and illegal "as void as against public policy for the reasons that the provisions thereof which in substance purport to confer upon the plaintiff an exclusive right to maintain a telephone system and furnish telephone service in the Yates Hotel tend to destroy competition in the telephone business and are discriminatory and therefore void and contrary to public policy."

Upon the trial the court at Special Term held: (1) That the contract was not terminable by the defendants under the thirty-day clause contained in the printed portion thereof; (2) that the exclusive clause was illegal and void in so far as it purported to grant to the plaintiff the exclusive right to maintain a telephone system in the Yates Hotel and the exclusive right to furnish telephone service thereto; and (3) that the rights in the Yates Hotel granted to the plaintiff by the exclusive clause constituted an inseparable part of the consideration for the contract and that, therefore, the contract was *wholly* illegal and void. Judgment was thereupon rendered dismissing the complaint and awarding costs to the defendants. This judgment has been reversed by the Appellate Division, which has held, one member of the court dissenting, that the exclusive clause is not open to any legal objection whatsoever, but is a valid agreement which the plaintiff is entitled to enforce. We are, therefore, called upon to determine as between these conflicting views which is right.

There is a finding in accordance with the allegations of the complaint and to which no exception is taken, to the effect that the plaintiff installed the private hotel telephone exchange in the Yates Hotel at an expense of $2,700, which it was induced to incur by reason of and in reliance upon the nine-year term of service provided for in the contract and the exclusive telephone privilege thereby granted; and that "the plaintiff would not have installed in said hotel said private telephone exchange and incurred said expense in so doing, if it had understood said contract might be terminated by the defendants on thirty days' notice after the expiration of one

year from the commencement thereof or that the telephone privilege given by it was not exclusive."

It is manifest that the exclusive clause is a contract in restraint of trade. It prevents any one in the Yates Hotel from having telephone communication with customers of other telephone companies than the plaintiff. It prevents the persons served by such other companies from having telephonic communication with the Yates Hotel. It likewise destroys competition by shutting out all rivals of the plaintiff.

The restraint of trade thus effected, however, is only partial; and while a contract in general restraint of trade is still deemed illegal and void, the law permits contracts in partial restraint of trade, under some circumstances, where they are not unreasonable and are supported by sufficient consideration. (*Oregon Steam Navigation Company* v. *Winsor*, 20 Wallace, 64; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Wood* v. *Whitehead Brothers Co.*, 165 N. Y. 545.) The respondent contends that the exclusive clause here in controversy belongs to the class of contracts in partial restraint of trade which have thus been sanctioned by the courts; but this view leaves out of sight an essential difference which cannot be disregarded. Where the business to which the contract relates is of such a character that it cannot be subjected even to the partial restraint which is contemplated without injury to the public interest, then such partial restraint cannot be tolerated. (*West Va. Transportation Co.* v. *Ohio River Pipe Line Co.*, 22 W. Va. 600.) In the case cited it is declared that all the authorities warrant the inference "that if there be any sort of business, which from its peculiar character can be restrained to no extent whatever without prejudice to the public interest, then the courts would be compelled to hold void any contract imposing any restraint however *partial* on this peculiar business, provided of course it be shown clearly, that the peculiar business thus attempted to be restrained is of such a character, that any restraint upon it, however *partial*, must be regarded by the court as prejudicial to the public

interest." (Ib. 625.) The court then proceeds to inquire whether there are any sorts of business of this peculiar character, and concludes that such is the nature of the business carried on by railroad and telegraph companies.

The business of a telephone company, in its broader aspects at least, is legally indistinguishable from that of a telegraph company, the telephone being a telegraph in all essential particulars. In New Jersey it has been held that a corporation organized under an act to incorporate and regulate telegraph companies, and authorized thereby to exercise the power of eminent domain, may condemn lands for a telephone line although telephones are not mentioned in the statute. (*Duke v. Central N. J. Telephone Co.*, 53 N. J. L. 341.) In this state the statutory provisions for the incorporation of telegraph and telephone companies are contained in the same article and section of the Transportation Corporations Law, and the same provisions for the exercise of the power of eminent domain and the occupancy of the public roads, streets and highways apply to each. (Art. 9, §§ 100, 102.) Wherever the character and functions of telegraph companies have been considered by the courts, the prevailing opinion has been that they are to be deemed public service corporations, affected by a public interest, and hence that contracts tending to restrict the free and general use of their lines are invalid. The same doctrine is equally applicable to the business of telephone companies. In the case of *Western Union Telegraph Co.* v. *Chicago & Paducah R. R. Co.* (86 Ill. 246) the contract provided that the railroad company would furnish and erect telegraph poles and wires along its railroad for the telegraph company, and assured to the latter an exclusive right of way along the railroad, so far as it legally might do so. The court held that, so far as this contract precluded the railroad company from permitting other telegraph companies to place wires on the same poles, it was valid, but that it was contrary to public policy if construed as preventing another telegraph company from erecting a line of its own along the railroad's right of way. To the same effect is *St. Louis & Cairo R. R. Co.* v.

*Postal Telegraph Company* (173 Ill. 508, 537), where a contract of lease by a railroad company with a telegraph company, whereby the railroad company gave the telegraph company the exclusive use of the railroad right of way, was held to be void upon grounds of public policy, as being in restraint of trade and creating a monopoly. A similar contract was condemned on the same grounds in *Western Union Telegraph Co.* v. *American Union Telegraph Co.* (65 Georgia, 160), where the court said : " Shall the means, then, by which it (information) is transmitted, be monopolized by a contract ? * * * When such exclusive rights exist, or such monopolies are established, the same should be done by legislative grant and not by an individual contract." The likeness between telegraph companies and telephone companies is pointed out by the Supreme Court of New Jersey in *Duke* v. *New Jersey Telephone Co.* (*supra*) and by the Supreme Court of Nebraska in *State ex rel. Webster* v. *Nebraska Tel. Co.* (17 Neb. 126), where it is held that a telephone company is bound, under the doctrines of the common law, to furnish a telephone instrument to any person who desires to become a subscriber, who tenders a full compliance with the rules established for other subscribers, and is willing and able to pay the lawful rates for telephone service.

The limitation of the modern doctrine which sanctions certain contracts in partial restraint of trade is aptly illustrated by the case of *Chicago Gas Light Co.* v. *People's Gas Light Co.* (121 Ill. 530, 545). A gas company agreed with another gas company that during a period of one hundred years it would not lay any gas mains or pipes or furnish any illuminating gas in the west division of the city of Chicago. This contract was adjudged invalid by the Supreme Court of Illinois which said : " The ordinary rule, that contracts in partial restraint of trade are not invalid, does not apply to corporations like appellant and appellee, because they were engaged in a public business and in furnishing that which was a matter of public concern to all the inhabitants of the city."

The telephone is a scientific agency for the transmission of

human speech over distances a thousandfold greater than could be covered by the unaided voice. Interesting, strange and marvelous as the invention seemed when made, it is improbable to the last degree that the state would ever have granted the right to exercise the power of eminent domain to telephone companies or have permitted them permanently to occupy the public streets or highways, if the only communication feasible had been between each customer and a single other customer. The feature of the modern telephone system which constitutes its public value and affects it with a public interest is its ability to bring each customer into vocal communication with hundreds and oftentimes thousands of others. This makes it an instrument of great public convenience and utility, the usefulness of the service offered by each company being directly proportionate to the number of persons who can be reached thereby. The franchise having been granted because of this very element, that is to say, the capacity to serve the community so generally by serving so large number of individuals constituting the community — it cannot be tolerated that any grantee of the franchise shall exercise it in such a way as to lessen the value of the telephone as an instrumentality of service to the public. If a telephone company may contract for the exclusion of any other telephone service from the premises of its customers, it may thus deprive all those customers of telephone communication with every person who takes telephone service from rival concerns, and thus *prevent* just what all telephone franchises are designed to *promote* — that is, the availability to every member of the community who desires it and can afford to pay for it, of the most extensive telephone service attainable.

In return for the franchise which a telephone corporation receives from the state — including as it does the privilege of occupying highways and the right to exercise the power of eminent domain — it undertakes to furnish each customer with telephone service to as many other customers as it can obtain at the rates which the law permits it to charge; and

the law implies an obligation on its part to do nothing to les-
sen the facilities of the public to procure a more widely
extended service.   While it may, of course, adopt every
proper expedient to enlarge its own business, this does not
include the right to pursue a policy of exclusion which is dis-
tinctly injurious to the public by restricting their circle of
communication by telephone.   It matters not that the cus-
tomer may be willing to agree to exclude others or that the
contract to do so is supported by a sufficient consideration as
between the parties.   The evil in such an agreement is its
antagonism to the interests of the public.   If a telephone
company may make a contract of exclusion with one of its
customers it may make such a contract with all — and thus
preclude all from any telephonic communication with persons
who happen to be served by a rival company.   It is true that
the customers who had voluntarily entered into the agreement
of exclusion would have no just ground of complaint them-
selves ; but how about the customers of the rival company who
are thereby shut out from communication by telephone with
their neighbors ?   They are not parties to the contract and yet
they suffer its consequences, although they constitute a por-
tion of the public for whose benefit the franchise was granted
to the corporation whose action deprives them of the more
extended telephone service which otherwise they might enjoy.

It is on this broad ground that I think we ought to con-
demn the exclusive clause of this contract as against public
policy and, therefore, void.   It tends to nullify the consider-
ation moving to the public for the grant of the franchise, by
lessening the sphere of telephonic service ; and it is impossible
to regard a contract as consistent with public policy which
would defeat the very policy that induced the state to bring
one of the parties to the contract into existence as a public
service corporation.

If, as we have seen, a railway corporation may not contract
with a telegraph company to exclude all other telegraph com-
panies from its right of way it is difficult to perceive why it
should be permissible for the proprietors of a hotel to contract

with a telephone company to exclude all other telephone companies from the hotel premises. There is no stronger inducement to the managers of a public service corporation to serve the public well than a healthy apprehension that a rival concern will do so. It is sometimes argued that the presence of two telephone systems in a given district is a disadvantage to the community, which is best served by one system reaching all subscribers; but one system will never be made to reach all subscribers as cheaply as would otherwise be the case if the possibility of competition is destroyed.

To recapitulate the reasons which lead to the conclusion that this contract (the exclusive clause) is injurious to the public interest generally, the argument may be simply stated. The public franchises which telephone corporations enjoy are granted to promote the transmission of vocal messages between the largest numbers of persons who can be brought into communication with one another under satisfactory economic conditions. This purpose is frustrated by any agreement which operates to prevent the rendition of telephone service where otherwise it could be obtained. A contract between a telephone corporation and one of its subscribers whereby the latter excludes all other telephone service from his premises deprives all the patrons of that other telephone service from telephonic communication with such subscriber and all the occupants of his premises. Though the number affected by one such exclusive contract may not be large, if exclusion may be exacted from one customer it may be exacted from all, and so a corporation first in the field might establish a monopoly to the detriment of a large proportion of the community and their deprivation of telephonic inter-communication. This illustration serves to show the danger to the public which would arise from permitting any such exclusive contracts at all. The validity of a single one cannot be recognized without peril to the public interest.

In the courts below much importance was attached to the case of *Lough* v. *Outerbridge* (143 N. Y. 271) as an authority in support of the validity of the exclusive clause in the pres-

ent contract. In that case it was held that a contract the tendency of which was to prevent competition in the carriage of goods by ocean steamers running between New York and Barbadoes was not such a contract in restraint of trade as to be contrary to public policy inasmuch as the rates charged by the defendant were not unreasonable. The case, however, is readily distinguished from the case at bar. It did not relate to the conduct of the business of a public service corporation or the business of a corporation in any wise affected with a public interest. Here the parties directly and indirectly affected are telephone corporations whose operations continuously and intimately concern the interests of the community which they undertake to serve and in the broadest sense the interests of the public at large.

Having reached the conclusion that the exclusive clause of the contract in controversy is void, we are brought to the question whether its invalidity necessarily avoids the whole contract. I think that it does not. The rule applicable to the solution of this question was admirably stated by Mr. Justice WILLES in *Pickering* v. *Ilfracombe Ry. Co.* (Law Reports [3 C. P.] 250), where he said : " The general rule is that, where you cannot sever the illegal from the legal part of a covenant, the contract is altogether void ; but where you can sever them, whether the illegality be created by statute or by the common law, you may reject the bad part and retain the good." Sir Frederick Pollock, in his treatise on the Principles of Contract (p. 367), says : " A lawful promise made for a lawful consideration is not invalid by reason only of an unlawful promise being made at the same time and for the same consideration." In *Price* v. *Green* (16 M. & W. 346) the defendant's testator had covenanted not to carry on the trade of a perfumer, toy man or hair merchant within the cities of London or Westminster, or within 600 miles therefrom. The Exchequer Chamber, affirming the judgment of the Court of Exchequer, held that this covenant was divisible, being good as far as it related to the cities of London and Westminster, but void as to the 600 miles ; and upon evidence

that the person bound had carried on trade in the city of London, it was held that he was liable in damages for such breach of the contract. In *Leavitt* v. *Palmer* (3 N. Y. 19, 37) it was said by Bronson, J., that "where a deed or other contract contains distinct undertakings, some of which are legal, and some illegal, the former will in certain cases be upheld, though the latter are void;" and in *Oregon Steam Navigation Co.* v. *Winsor* (*supra*) Chitty's statement of the rule applicable to the divisibility of contracts is quoted with approval, where he says "that agreements in restraint of trade, whether under seal or not, are divisible; and, accordingly, it has been held that when such an agreement contains a stipulation which is capable of being construed divisibly, and one part thereof is void as being in restraint of trade, whilst the other is not, the court will give effect to the latter, and will not hold the agreement to be void altogether." It does not seem necessary to specify numerous other authorities which might be cited to sustain the severance of the illegal part of this contract from the portions which are legal.

If I am right in thinking that they may thus be severed, it follows that, upon the facts as they appeared without dispute on the trial, the plaintiff was not entitled to enjoin the defendants from introducing into the Yates Hotel other telephone instruments than those which the plaintiff had furnished under the contract. On the other hand, inasmuch as the defendants admitted that they proposed to discontinue and abandon the use of the private hotel exchange with which the plaintiff had equipped the Yates Hotel, the plaintiff was entitled to prevent such discontinuance and abandonment. In other words, the plaintiff was entitled to a part of the relief which it claimed, but not all. It could lawfully insist that the defendants should retain and continue to employ its telephone exchange and telephone system, but it could not lawfully prevent the defendants from admitting other telephone systems or placing other telephone exchanges in their premises. Under these circumstances, the only remaining inquiry is what relief can be afforded upon the present appeal

to the defendants, who are under a legal obligation to comply with every portion of their contract with the plaintiff except that portion which relates to the exclusion of other telephones.

All the facts necessary to a complete determination of the controversy between the parties were found by the trial judge. There was really no dispute as to the facts. The only questions as to which the parties were at variance were questions of law relating to the validity of the exclusive clause of the contract and its effect if invalid upon the remainder of the agreement. Under these circumstances the trial court, having denied to the plaintiff any right of relief whatever, the Appellate Division properly reversed the judgment. Instead of granting a new trial, however, we think it should have directed judgment for the plaintiff as prayed for in the complaint except so far as the complaint sought to enforce the exclusive clause of the contract; that is to say, it should have directed judgment awarding the plaintiff an injunction against the removal of the plaintiff's telephone system and appliances from the Yates Hotel or their severance from the plaintiff's general telephone system and against any adverse interference therewith. To this extent the plaintiff is clearly entitled to relief; and in an equity suit, where there is no controversy as to the facts and they have all been judicially ascertained and established in the form of findings, there is no occasion to send the case back for a new trial and thus put the parties needlessly to further labor and expense. The order of the Appellate Division should, therefore, be modified so as to reverse the judgment of the Special Term and (instead of granting a new trial) direct judgment for the plaintiff to the extent indicated in this opinion, without costs to either party.

CULLEN, Ch. J., HAIGHT, HISCOCK and CHASE, JJ., concur; GRAY, J., not voting.

Ordered accordingly.