PEOPLE ex rel. PERCEVAL v. PUBLIC SERVICE COMMISSION FOR FIRST DIST. et al.  (No. 6102.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. ELECTRICITY (§ 11*)—PUBLIC SERVICE CORPORATIONS—DUTY.

Both under the common law and Transportation Corporation Law (Consol. Laws, c. 63) § 62, and Public Service Commissions Law (Consol. Laws. c. 48) § 65, a public service corporation, such as an electric company, which is allowed to use the public streets and highways for the carrying of its conduits, is bound to serve impartially every member of the community who demands its service and stands ready to pay therefor and to comply with reasonable regulations respecting such service.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 11.*]

2. ELECTRICITY (§ 11*)—ELECTRIC COMPANIES—REGULATIONS.

An electric company cannot, as a condition precedent to furnishing current to a customer, require him to refrain from purchasing current from any other company; such condition being monopolistic in its tendency.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 11.*]

3. ELECTRICITY (§ 11*)—ELECTRIC COMPANIES—DUTY TO FURNISH CURRENT FOR POWER.

Where an electric company professed and undertook to furnish electric current for power purposes, although it was required by law only to furnish electricity for lighting, its common-law duty, it being a public service corporation, required it to serve all members of the public alike.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 11.*]

Certiorari by the People, on the relation of C. Perceval, a corporation, against the Public Service Commission and others, to review the action of the Public Service Commission. Determination of Commission reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Nelson S. Spencer, of New York City, for relator.

Henry J. Hemmens, of New York City, for respondents.

SCOTT, J. This is a proceeding by writ of certiorari to review the action of the Public Service Commission for the First District in dismissing the complaint of the relator against the New York Edison Company for its refusal to supply electric current.

The relator occupies, as tenant, premises known as Nos. 2, 4, and 6 Ninth avenue in the city of New York. On July 13, 1913, it made application to the Edison Company for a supply of electric current. This application was made upon three forms furnished by the company, one being an application for electricity for lighting purposes, one for power purposes, and the third for storage and refrigerating purposes. Each of these application forms, when presented to relator, contained the following clause, after a provision that no change should be made in the equipment, etc.:

"Nor other electric service introduced or permitted in connection with the equipment, without the previous written consent of the New York Edison Company."

These words relator struck out of the application before sending it to the company, explaining that it had done so because it had made other arrangements for service during the day from 7 a. m. to 5:30 p. m., and proposed to use the Edison service only at night.

The other arrangements above referred to were as follows: Adjoining the building occupied by relator was another large building occupied by a tenant named Wing, in which was installed a private electrical plant intended primarily for the benefit of the Wing building, but which was capable of generating more electricity than was required for that building. Relator had arranged with Wing to use his surplus electricity during the day, but it would not be available at night. Relator deals largely in perishable edibles necessitating a con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tinuous use of electricity during the entire 24 hours of the day both for light and for the operation of its refrigerating plant. Its plan was to use the current obtained from Wing during the day, and that obtained from the Edison Company during the night. The Edison Company refused to supply any electric current under these circumstances, placing itself squarely upon the position that it was under no obligation to furnish electric current to any one unless that person agreed to take from the company all the current which it required. In this position it has been upheld by the Public Service Commission.

[1] The Edison Company is a public service corporation holding a franchise from the state, and enjoying by reason of its public character certain valuable privileges not usually accorded to a private individual or corporation for its own individual benefit, not the least of which is the right to use the public streets and highways for carrying its conduits. Having undertaken to perform a public service and accepted special privileges in consideration of such undertaking, it is bound to serve impartially every member of the community who demands its service and stands ready to pay therefor and to comply with proper and reasonable regulations respecting such service. Gibbs v. Baltimore Gas Co., 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979; Cent. N. Y. Tel. & Tel. Co. v. Averill, 199 N. Y. 128, 92 N. E. 206, 32 L. R. A. (N. S.) 494, 139 Am. St. Rep. 878. Not only is the company under this obligation at common law, but it is expressly required by statute to furnish electricity for lighting upon the application of the occupant of any building or premises within one hundred feet of its main or wires, as it is conceded that relator's premises are. Section 62, Transportation Corporation Law. The same duty is imposed by section 65 of the Public Service Commissions Law. As was said by the Supreme Court of the United States of a public service company:

It "must render the service for which it obtained its charter to those within reach of its facilities without distinction of persons." Consumers' Company v. Hatch, 224 U. S. 19, 32 Sup. Ct. 465, 56 L. Ed. 703.

[2] It is, of course, the rule that such a corporation may establish reasonable regulations respecting the use of the service which it proposes to furnish, and each customer requiring the service is called upon to comply with such regulations. In our opinion, however, the requirement that a consumer must take all of its electricity from one company, or receive none at all, is not in any proper sense a regulation respecting the use of the service, but is a purely arbitrary attempt on the part of the company to insure to itself a monopoly of furnishing electrical current. If the company can lawfully decline to furnish any current to this relator because he also proposes to obtain electricity from a neighbor (not a competing company), it can equally well refuse to furnish electrical current to a consumer who himself generates a part of the current which he uses. Such a limitation upon the company's obligation would, as it seems to us, be quite unreasonable. An exclusive clause similar in purport and intention to the one insisted upon by the defendant company was severely condemned upon grounds of public policy in Cent. N. Y. Tel. & Tel. Co. v. Averill, supra. An attempt, not thoroughly successful, was made before the Public Serv-

ice Commission to establish the fact that relator sought to use the company's current only during those hours that it would be most expensive to produce it. If that be so, the situation could be readily met by establishing a rate for such service; but it is probably not so, for it surely must be that a very large proportion of the company's customers use electricity only at night and not at all in the daytime, and yet no one would say that it would be reasonable for the company to refuse to furnish current unless the customers would undertake to use it during the whole 24 hours of each day.

[3] It is urged by the company, and apparently agreed by the commission, that the company in any event is not obliged to furnish electricity for power and refrigerating purposes. This contention is based upon the language of section 62 of the Transportation Corporation Law, above cited, which refers only to the furnishing of electricity for lighting purposes. In our opinion, however, the company's duty to furnish service does not rest upon the statute alone, but upon the common-law obligation as a public service corporation which requires it to serve impartially every member of the community. It may be that, if it did not undertake to furnish electricity for power purposes to any one, it could not be coerced to do so. Upon that question we express no opinion. It does, however, profess and undertake to furnish electric current for power purposes, and this it does by virtue of its franchise as a public service company. So professing and undertaking, it cannot arbitrarily pick and choose whom it will serve and whom it will not.

To sum up our conclusion, we are of opinion that the company's reasons for refusing to furnish electrical current to the relator are untenable, and that the restrictive clause which it insists in inserting in its contracts, and to which relator objects, is contrary to public policy and invalid and constitutes in no proper sense a reasonable regulation respecting the use of the service which relator demands.

The writ is therefore sustained, the determination of the Public Service Commission reversed, and the matter referred back to said commission to make such order in the premises as may be proper, with $50 costs and disbursements to the relator to be paid by the defendant the New York Edison Company. All concur.

---

(163 App. Div. 475)

HEARST v. NEW YORK CENT. & H. R. R. CO. (No. 6017.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. RAILROADS (§ 222*)—OPERATION—ENJOINING NUISANCE.

    A property owner, if entitled in any event to injunctive relief against the use of railroad switches and sidings for the purposes of a terminal yard, where the annoyances suffered by him were not special or peculiar to him, but were shared by every one else in the vicinity, was not so entitled unless the railroad company was acting unlawfully, unreasonably, or negligently.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes