People ex rel. Woodhaven G. L. Co. *v.* Pub. Serv. Comm. 369

App. Div. 369]        First Department, November, 1922.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE WOODHAVEN GAS LIGHT COMPANY, Relator, *v.* THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

First Department, November 17, 1922.

**Gas and electricity — proceeding to compel extension of gas mains by subsidiary company — subsidiary company owned absolutely by parent company — Public Service Commission in considering expense of making extension should take into consideration relation between subsidiary company and parent company — power of Appellate Division in reviewing decision of Public Service Commission that extension should be made is limited — findings of Public Service Commission can be set aside only where verdict of jury might be set aside as against weight of evidence.**

In proceedings to compel a gas company to extend its mains where it appears that the company does not manufacture any gas but buys all of its gas from another corporation which owns all of its capital stock, the Public Service Commission, in considering the expense involved in the extension, should take into consideration the relation existing between the subsidiary company and the parent company and is not necessarily limited to a consideration of the expense with relation either to the capitalization or stated income of the subsidiary company.

The power of the Appellate Division to review a decision of the Public Service Commission, that an extension of the service of a gas company into a new locality is reasonable and necessary, is limited, and the court can only set aside an order directing an extension when there is such a preponderance of proof against the existence of the facts found that the verdict of a jury affirming the existence thereof would be set aside as against the weight of the evidence.

CERTIORARI issued out of the Supreme Court and attested on the 19th day of July, 1920, directed to Lewis Nixon, constituting the former Public Service Commission of the First District, commanding him to certify and return to the office of the clerk of the county of New York all and singular the proceedings had resulting in an order dated the 20th day of April, 1920, requiring the relator to extend its gas mains and service.

*Cullen & Dykman* [*Jackson A. Dykman* of counsel; *William N. Dykman* with him on the brief], for the relator.

*Edward M. Deegan* of counsel [*Ledyard P. Hale*, counsel to the Public Service Commission], for the respondent.

*James E. Finegan*, for Central Gas Committee of the Fourth Ward.

PAGE, J.:

The relator is a public service corporation which has a franchise to lay its mains in the streets and supply residents of the town of Jamaica, now the fourth ward of the borough of Queens.

24

**370** · PEOPLE EX REL. WOODHAVEN G. L. CO. *v.* PUB. SERV. COMM.

First Department, November, 1922. [Vol. 203

The relator manufactures no gas, but purchases all it distributes from the Brooklyn Union Gas Company, which owns all the stock of the relator, and whose treasurer is the relator's president. The Brooklyn Company charged the relator fifty cents per 1,000 cubic feet in 1918, but increased the price to sixty-five cents on January 1, 1919. The relation between the Brooklyn Company and three other companies similarly situated was very aptly described by Commissioner Hayward in *Matter of Hermann* v. *Newtown Gas Co.* (7 P. S. C. Rep. 1st Dist. 101) in the following language, which was quoted with approval by Mr. Justice GREENBAUM, in *Jamaica Gas Light Co.* v. *Nixon* (110 Misc. Rep. 502): " These three companies, together with the Newtown Company, constitute a part of the distributing system of a great parent company, the Brooklyn Union Gas Company. And it is a parent company in the truest sense of the word. It maintains the most absolute control and ownership over them. The four companies are more than subsidiaries as that word is ordinarily used. They are the very limbs of the Brooklyn Union Gas Company. There is an absolute and inextricable identity of interests. The four small companies supply gas to the second and fourth wards but nominally. They are nothing more than paper corporations, convenient operating divisions of the Brooklyn Union Company, which owns every share of their stock and has advanced every penny invested in them. No private investors own a share of their stock or are interested in one of them. The outstanding securities of the Brooklyn Union constitute the only connecting link between the investors and these four companies. None of them manufacture a foot of gas, and all that they distribute is made at and comes from the works of the Brooklyn Union Company, which company picks from among its employees the officers of the small companies, whose salaries, together with other general expenses, are arbitrarily divided and apportioned among the Queens companies and are at the most simply bookkeeping entries."

Therefore, in considering the expense involved in the extension of this service, the Public Service Commission should take into consideration the relation existing between this company and the Brooklyn Union Gas Company, and was not necessarily limited to a consideration of the expense with relation either to the capitalization or stated income of the relator. A public service corporation cannot minimize the duty it owes to the public by incorporating a portion of its distributing system.

The power of this court to review the action of the Public Service Commission, when it decides that an extension of the service of such company into a new locality is reasonable and necessary, is

very much limited. We reversed the Public Service Commission in the case of *People ex rel. New York & Queens Gas Co.* v. *McCall* (171 App. Div. 580) and annulled an order made by said Commission requiring the gas company to extend its gas mains and services to Douglaston in the borough of Queens, stating: " We have no doubt that under this law the question remains for the court to determine, upon the review of the determination of the Public Service Commission, whether the extension ordered was a reasonable extension."

On appeal to the Court of Appeals the order of this court was reversed (219 N. Y. 84), the opinion stating at page 87 the following: " This statement of the law is quite likely to create a misapprehension as to the power of the court. The court has no power to substitute its own judgment of what is reasonable in place of the determination of the Public Service Commission, and it can only annul the order of the Commission for the violation of some rule of law.

" The Public Service Commissions were created by the Legislature to perform very important functions in the community, namely, to regulate the great public service corporations of the State in the conduct of their business and compel those corporations adequately to discharge their duties to the public and not to exact therefor excessive charges. It was assumed perhaps by the Legislature that the members of the Public Service Commissions would acquire special knowledge of the matters intrusted to them by experience and study, and that when the plan of their creation was fully developed they would prove efficient instrumentalities for dealing with the complex problems presented by the activities of these great corporations. It was not intended that the courts should interfere with the Commissions or review their determinations further than is necessary to keep them within the law and protect the constitutional rights of the corporations over which they were given control."

The case was taken by a writ of error to the United States Supreme Court, and that court said (245 U. S. 345, 351): " We agree with the Court of Appeals of New York in concluding that the action of the Commission complained of was not arbitrary or capricious, but was based on very substantial evidence, and therefore that, even if the courts differed with the Commission as to the expediency or wisdom of the order, they are without authority to substitute for its judgment their views as to what may be reasonable or wise."

Therefore, in reviewing the findings of fact of the Commission, we can only set aside an order when there is such a preponderance of proof against the existence of the facts found that the verdict of the jury affirming the existence thereof would be set aside by

the court as against the weight of evidence. (*People ex rel. New York Edison Co.* v. *Willcox,* 151 App. Div. 832, 842.)

The Commissioner found that the company in 1916 had through representatives promised to make the necessary installation and extend the services to Springfield, and that many of the houses in the localities that would be served by such extension were piped for gas. He also found that the communities to be served were growing rapidly, and that the character of the houses being erected gave evidence that the occupants would become customers of the gas company. In fact, it appeared that some of the pipe was bought by the gas company for the purpose of making this extension in 1916 and was stored, and the delay from 1916 to 1920 was occasioned by the increase in cost arising out of the World War.

There was sufficient evidence to sustain that finding of fact. Of course, the extension of these mains will be a subject of expense to the company, a return upon the investment of which may be secured in a short time by the increased number of customers that will result from the extension of the facilities for the use of gas for light and heat. But the expense to the company is not the only matter for consideration. The company holds a valuable, exclusive franchise to supply gas in this territory. There was imposed upon it the corresponding duty to serve the public. As was said by the Court of Appeals in *People ex rel. New York & Queens Gas Co.* v. *McCall* (*supra*): " The occupants of these houses can get no gas unless they are supplied by the relator. It is the duty of the relator to supply their needs if practicable." The United States Supreme Court, in affirming the decision of the Court of Appeals, said: " Corporations which devote their property to a public use may not pick and choose, serving only the portions of the territory covered by their franchises which it is presently profitable for them to serve and restricting the development of the remaining portions by leaving their inhabitants in discomfort without the service which they alone can render."

I, therefore, recommend that the writ be dismissed, with fifty dollars costs and disbursements, and the order of the Public Service Commission affirmed.

CLARKE, P. J., DOWLING, GREENBAUM and FINCH, JJ., concur.

Writ dismissed and proceedings confirmed, with fifty dollars costs and disbursements.