GEORGIA PUBLIC-SERVICE COMMISSION *et al. v.*
GEORGIA POWER COMPANY.

No. 11031. JUNE 20, 1936. REHEARING DENIED JULY 11, 1936.

Judges Gardner, Graham, and Worrill were designated for this case, instead of disqualified Justices of the Supreme Court.

*M. J. Yeomans, attorney-general, Allen Post, George L. Goode, and O. H. Dukes,* for plaintiff in error.

*Colquitt, MacDougald, Troutman & Arkwright,* contra.

GARDNER, Judge. In the case sub judice it appears that the Georgia Power Company is a public-service company transmitting and distributing electric energy to communities in Sumter County and other counties adjacent thereto. This company has a high-power transmission line which passes within sixty-nine feet of the corporate limits of the City of Andersonville. There appears to have been a desire on the part of the inhabitants of this municipality to obtain service from this company, reflected by and perhaps resulting in the joint resolution of the Senate and House, approved by the Governor on February 16, 1935, requesting the Public-Service Commission to institute appropriate proceedings to require the Georgia Power Company to furnish this service. After notice to the company, the Public-Service Commission conducted a hearing in Andersonville on March 28, 1935, to determine whether or not the power company should be required to furnish electric service to the inhabitants of that municipality. Subsequently, after the hearing, and on June 4, 1935, the commission

ordered that the company construct "such distribution system within the City of Andersonville as will give the citizens electrical service, connecting the same to their transmission lines at such points as they deem necessary to give the proper service; the construction of said plant to commence within thirty days from the date of this order and to be completed as rapidly as possible." The company filed a petition seeking an injunction against the commission and the enforcement of the order quoted above, praying that this order be adjudged illegal, invalid, void, unconstitutional, and violative of the constitutional rights of the company. In the petition it is alleged that no power is conferred on the commission to pass the order; that the joint resolution of the General Assembly of February 16, 1935, was not a legislative act enlarging the powers of the commission; that if any of the statutes of the State, conferring jurisdiction upon the commission, or the joint resolution of the General Assembly, be so construed as authorizing the commission to pass such an order, then such acts and resolutions as thus construed would be violative of the due-process-of-law provisions of the Federal and State constitutions, on numerous grounds in the petition set forth.

The defendants answered, denying that such acts conferring power upon the commission, and the order entered in pursuance of the powers claimed, were unconstitutional for any of the reasons alleged in the petition. They asserted that they conducted a thorough hearing, and as a result thereof determined that it is reasonable, practicable and just, fair from the standpoint of the Georgia Power Company, and advantageous from the standpoint of Andersonville, to order such service; and that a refusal to grant such service would cause discrimination against and a denial of proper facilities to consumers who are entitled, under the facts, to receive electric service.

The case was heard, on application for interlocutory injunction, by three of the judges of Fulton superior court. The plaintiff introduced two affidavits by Charles A. Collier, in which he swore that the institution of the service ordered would involve an outlay of about eight to ten thousand dollars, and would result in an annual loss estimated by him to amount to a minimum of $806.60 and a maximum of $1176; that the Georgia Power Company, as a public utility, has not undertaken to serve the City of Anderson-

ville; that it has no franchise; that the nearest point of electrical service to the city, served by the company under a franchise, is Americus—a distance of approximately ten and one half miles from Andersonville; that during the World War there was an aviation field located at Arles, and to serve this field with lights an electric-service line was extended from Americus to Arles, a distance of approximately five miles; that the company does not serve any territory with electric energy or power nearer Andersonville than Arles, which is five and one half miles distant; that the company has no franchise to construct or build service lines from Arles to Andersonville, and has no distribution lines or electrical construction in Andersonville. No effort was made to show what the result of instituting such service would be upon the earnings of the entire system. The defendants introduced ordinances of the City of Andersonville granting a franchise to the Georgia Power Company, and attempting to relieve that company perpetually from taxation in said municipality; and a deed purporting to convey the necessary right of way for the distribution line. It was stipulated that neither of the ordinances nor the deed had been delivered to or accepted by the power company. An affidavit of the mayor and clerk of the municipality was offered, by which it appeared that no taxes had been levied by the city except a small occupation tax on merchants. Other affidavits were offered to show the distance of the high-tension transmission line to be sixty-nine feet from the corporate limits and approximately one mile from the center of the municipality.

Provisions in the charters of certain corporations to the properties of which the plaintiff company had succeeded were also offered in evidence, as follows:

In connection with Americus Gas & Electric Company, the charter of which was granted on September 14, 1911, the corporation prayed and received "the right, privilege, and power . . To build, erect, equip, maintain, acquire, and operate an electric-light plant in the City of Americus, for the purpose of generating electricity and supplying the same for lighting, heat, and power, with the right to erect its poles and wires in and upon the streets of the City of Americus and in the County of Sumter, for the purpose of transmitting said electricity wherever the same is desired. " The charter of the Americus Lighting Company granted

on March 23, 1917, by the superior court of Sumter County, contained the following: "That the principal business to be carried on by said Americus Lighting Company is as follows: . . To own and operate an electric-light plant in the City of Americus, for the purpose of generating and selling electricity for lighting and power purposes, and for all other purposes for which electricity may be employed or used, with the right to erect poles and wires in and upon the streets, alleys, and ways of the City of Americus, and upon the public roads of Sumter County, and other counties of the State; and to put in all fixtures and apparatus necessary for the erection of said plant. . . The principal office and place of business of the proposed corporation shall be in the City of Americus, said State and County, with the right and privilege to establish and maintain branch offices and businesses elsewhere."

In the application of the South Georgia Public-Service Company, in Dougherty County (granted on December 2, 1922), the petitioner "desires the right to establish branch offices and to engage in business elsewhere, within or without the State, whenever the holders of a majority of the stock may so determine." This application stated that "The business to be carried on by said corporation is that of . . supplying light, heat, and power to the public in counties, cities, towns, and villages of the State of Georgia." The above prayers were granted.

The petition of the South Georgia Power Company in the superior court of Dougherty County, incorporated November 2, 1933, contained the following: "The principal office and place of business of the corporation shall be in the City of Albany, State and County aforesaid, but petitioners desire the right to establish plants, works, and branch offices in such places, whether in the State of Georgia or outside of its boundaries, as may be found desirable. . . The business to be carried on by said corporation is the generation or purchase and distribution of electricity for light, heat, and power and all other purposes for which the same may be used, and particularly for the purpose of lighting towns and cities, supplying heat, light, and power to the public. . . In furtherance of and in connection with, but not in limitation of, the object and purposes aforesaid, petitioner desires a grant of the following powers, viz.: . . to acquire by lease, purchase,

levy, or consolidation any or all of the property, rights, and franchises of the Georgia-Alabama Power Company, a North Carolina corporation, and of the South Georgia Public-Service Company in the State of Georgia, and to carry on the business and perform the service heretofore carried on and performed by said companies . . to construct or otherwise acquire or own, lease, mortgage, sell and dispose of such pipes, conduits, poles, lines, wires and conductors as may be necessary on entering in connection with the prosecution of said business." The above prayers were granted.

The deed from South Georgia Power Company to Columbus Electric & Power Company, dated May 31, 1930, passed title to the Columbus Electric & Power Company of the properties which had been operated by South Georgia Power Company at the time of the deed. The joint agreement of the Georgia Power Company, dated June 26, 1930, showed that it succeeded to the property and franchise of the Columbus Electric & Power Company.

The defendants offered the affidavits of C. A. Mees and N. Knowles Davis, both purporting to be expert electrical engineers, from which it appeared that the plaintiff company was serving the municipalities of Alston, Clem, Dewey Rose, Eldorado, Grovetown, Holly Springs, Mount Zion, Sharpsburg, Spring Place, Suwanee, and Turin, all in Georgia, and all of which are municipalities comparable in population and in the number of consumers with Andersonville, and therefore in the same general class. One of the affidavits contains a table-list of such towns so served, of approximately the same population as Andersonville, showing the voltage of the high-tension line from which service is procured, the population in 1920 and 1930, and the number of customers served at various times by the Georgia Power Company of communities in Georgia, as follows:

| Trans. Voltage Town | Population 1920 | 1930 | Oct. 1929 | July 1930 | Jan. 1931 | July 1931 | Jan. 1932 | Nov. 1932 | Jan. 1934 | Jan. 1935 |
|---|---|---|---|---|---|---|---|---|---|---|
| 44 KV Alston' | 111 | 199 | 29 | 28 | 30 | 28 | 29 | 34 | 28 | 29 |
| 38 KV Clem | 200 | 200 | 18 | 20 | 19 | 16 | 14 | 11 | 9 | 14 |
| 38 KV Dewey Rose | 250 | 250 | 22 | 22 | 21 | 22 | 22 | 18 | 19 | 20 |
| 44 KV Eldorado | 125 | 125 | — | 14 | 16 | 16 | 17 | 18 | 18 | 17 |
| 44 KV Grovetown | 425 | 267 | 36 | 37 | 38 | 36 | 39 | 39 | 39 | 46 |
| 38 KV Holly Springs | 216 | 273 | 45 | 46 | 43 | 43 | 44 | 36 | 35 | 38 |
| 38 KV Mt. Zion | 131 | 121 | 14 | 12 | 16 | 17 | 17 | 17 | 18 | 19 |
| 38 KV Sharpsburg | 170 | 137 | 24 | 24 | 25 | 27 | 23 | 25 | 26 | 28 |
| 22 KV Spring Place | 208 | 186 | 21 | 21 | 23 | 23 | 26 | 24 | 25 | 30 |
| 38 KV Suwannee | 246 | 214 | 47 | 55 | 56 | 50 | 47 | 45 | 39 | 46 |
| 38 KV Turin | 239 | 208 | 37 | 38 | 38 | 37 | 37 | 37 | 35 | 39 |
| Andersonville | 196 | 231 | | | | | | | | |

From affidavits offered by the defendant it further appeared that the expense of a step-down from a 44 KV high tension line is practically the same as a step-down from a 38 KV high tension line; and that there is no power or electric company, either public or municipal, excepting Georgia Power Company, furnishing power or electric service to the general public within Sumter County, or any adjoining county; no public utility serves the general public in this territory with the exception of the Georgia Power Company, and no other public utility has any facilities for such service; this territory is so covered with the power facilities of the Georgia Power Company as to make it economically impracticable for any other public utility to extend its lines for the great distance necessary in order to serve whatever places in said territory do not receive service now from the existing utility facilities located therein as illustrated by blue print attached as exhibit to the bill of exceptions.

In the affidavits offered by the Public-Service Commission it was averred that the total investment necessary to render service to Andersonville would be approximately $5600; that the estimated annual operating profit would be $246, representing a return of 4.39 per cent on the required capital investment. Attached to one of these affidavits are copies of reports made by the Georgia Power Company, from which it appears that this company has plants, transmission and distribution lines, and other equipment valued at over one hundred and forty million dollars; that its operating revenue for 1934 exceeded twenty-one million dollars, and after payment of all operating expenses, losses, taxes, and interest and amortization on its outstanding debt, it had a net income of $3,909,707.18, and, after payment of dividends, transferred to its surplus account over nine hundred forty thousand dollars.

The court granted an injunction, and held the order of the commission null and void. To this order the defendants excepted.

The principles announced in headnotes 1, 2, 3, and 4 need no elaboration.

■ (5) The power conferred upon the commission does not offend either the State or the Federal constitution in any of the particulars asserted by the defendant in error. In the case of Interstate Commerce Commission v. Oregon-Washington R. &c. Co., 288 U. S. 14, 32 (53 Sup. Ct. 266, 77 L. ed. 588), the Supreme Court of the United States recognized that the power to compel extensions of existing lines by public-service companies rests in the States. This power may be exerted either directly by the legislative authority or by administrative bodies endowed with power to that end. Atlantic Coast Line R. Co. v. North Carolina Corporation Commission, 206 U. S. 1 (27 Sup. Ct. 585, 51 L. ed. 933, 11 Ann. Cas. 398). The questions at issue turn upon the point as to whether or not, upon all the facts of this case, the Georgia Power Company has actually or impliedly dedicated its property in such a manner as to amount to a profession to serve Andersonville. Under the evidence the Public-Service Commission was authorized to find that it has, the evidence being sufficient to show that it has pre-empted the territory. In the territory of Andersonville it enjoys practically a monopoly. Under such facts as are the basis of this case, or similar facts, we have failed to find any decisions of the courts of any of the

jurisdictions which hold that to require an electrical power public-service corporation to furnish service to a member of a class which it has elected to serve would violate the due-process clause of either a State or the Federal constitution. Where any contrary view has been expressed by the courts, the facts were in no wise comparable to the facts of this case. In Interstate Commerce Commission v. Oregon-Washington R. &c. Co., supra (which is a railroad case, and not an electric-power company case), which counsel for both the plaintiff and defendant in error cite and argue at length as authority, the court held: "The possession of a charter which would have made the building of a railroad legal is insignificant as to the company's actual undertaking. Whether the railroad held itself out to serve the region in question must be decided in the light of all the facts. The record demonstrates that the territory to be traversed was one the company had neither actually nor impliedly agreed to serve with transportation facilities." We conclude from this view that the Georgia Power Company held itself out to serve the region of Andersonville, and the record demonstrates that the company impliedly, if not actually, agreed to serve Andersonville with hydro-electric power facilities.

In further discussing this question in the same case the U. S. Supreme Court said: "State courts have uniformly held that to require extension of existing lines beyond the scope of the carrier's commitment to the public service is a taking of property in violation of the Federal constitution." It will be noted that the court did not hold that to require an extension of existing lines is a taking of property in violation of the provisions of the Federal constitution, but it held that to require an extension beyond the scope of the commitment to the public service was such unlawful taking. It is one thing to require an extension of the existing line within the scope of the commitment to the public service, and quite another and different thing to require the extension of existing lines beyond such scope, and beyond the territory preempted, and beyond the region it had professed to serve. The Public-Service Commission of Georgia by authority of the Code, §§ 93-304, 93-305, 93-307, 93-308, was authorized to require the Georgia Power Company to furnish hydro-electric power to the municipality of Andersonville, and the power thus conferred does not contravene the due-process clause of either the State or the Federal constitution.

■ (6) A corporation organized to generate and supply hydro-electric power to the public, and having a monopoly of such power in the section where it operates, has no authority to select customers or discriminate against the members of a class it has elected to serve. Salisbury &c. R. Co. v. Southern Power Co., 169 N. C. 18 (101 S. E. 593, 12 A. L. R. 304); North Carolina Public Service Co. v. Southern Power Co., 282 Fed. 837; *Lawrence* v. *Atlanta Gas-Light Co.*, 49 *Ga. App.* 444, 447 (176 S. E. 75). The courts should not interfere with a valid order of the Public-Service Commission unless it be clearly shown that the order is unreasonable, arbitrary, or confiscatory. The courts have no power to substitute their judgment for that of the commission. The order in the instant case cannot be said to be arbitrary or capricious, so as to justify the courts in substituting their judgment for that of the commission as to what is reasonable under the circumstances of the case, there being no claim that the initial outlay or possible loss in operating expense will render the company's business, as a whole, unprofitable. New York & Q. G. Co. v. McCall, 245 U. S. 345 (38 Sup. Ct. 122, 62 L. ed. 337). This public-service company, from the evidence, enjoys commensurate profits by reason of its permissive operations in this State, and it will not be heard to complain because of the possibility of a small, isolated, loss incurred in order to serve, as required by the commission, a member of a class, which class it has undertaken to serve in a territory in which it holds a practical monopoly. Moreover, the Public-Service Commission was authorized to find from the evidence that the project required by the order would entail no loss.

The question here is not one of the termini of the lines or facilities, but one of the extent of the boundaries of the region, or of the scope of the territory which the public-service corporation, with power of eminent domain, actually or impliedly by virtue of its franchise from the government, and the conduct of the company in connection therewith, has committed itself to the public service. The Public-Service Commission has no authority to make any unreasonable or capricious or confiscatory requirements within such boundaries. This is a question of fact rather than of law, and for determination by a fact-finding body rather than a court of review. We realize that the difficulty comes in deter-

mining the line of demarcation between the two. It is not difficult in this case. The findings of the commission are within the boundaries of the commitment to the public service, and are not unreasonable, capricious, or confiscatory; and this court is without authority to disturb the findings of the commission. If the evidence clearly showed that the requirement of the commission was unreasonable, capricious, or confiscatory, the court would be bound to set such finding aside as unlawful in the taking of property without due process of law. Otherwise the court has no such authority. It is convincing that wherever the courts have had this question for consideration each case was determined upon the facts of the particular case under review. The case at bar is decided on the particular facts as disclosed by the record. See also Smith v. Ky. Utilities Co., 233 Ky. 688 (24 S. W. (2) 928); 9 R. C. L. 1196; People ex rel. Perceval v. Public-Service Commission, 163 App. Div. 705 (148 N. Y. Supp. 583); State ex rel. Ozark Power Co. v. Public-Service Com., 287 Mo. 522 (229 S. W. 782)·; Lukrawka v. Spring Valley Water Co., 169 Cal. 318 (146 Pac. 640, Ann. Cas. 1916D, 277); People ex rel. Woodhaven Gas-Light Co. v. Public-Service Com., 203 App. Div. 369 (196 N. Y. Supp. 623), s. c. 269 U. S. 244 (46 Sup. Ct. 83, 70 L. ed. 255); Root v. New Britain Co., 91 Conn. 134 (99 Atl. 559); Oklahoma Gas &c. Co. v. State, 87 Okla. 174 (209 Pac. 777); Philadelphia Rural Transit Co. v. Public Service Com., 103 Pa. Super. 256 (158 Atl. 589); So. Power Co. v. N. C. Pub.-Serv. Co., 263 U. S. 508 (44 Sup. Ct. 164, 68 L. ed. 413); Southern Bell Telephone &c. Co. v. Calhoun, 287 Fed. 381.

*Judgment reversed. Justice Bell and Judges Graham, Worrill, and Gardner concur. Presiding Justice Beck and Justice Gilbert dissent.*

GILBERT, Justice, dissenting. From' an examination of the statutes as they appear in the Code, §§ 93-305 to 93-308, inclusive, it 'appears that the only provision that can be considered as authorizing the action taken by the Public-Service Commission is found in· § 93-307, to wit: Authority is granted the Public-Service Commission "to require . . public-service companies under its supervision to establish and maintain such public service and facilities as may be reasonable and just," etc. If the Georgia Power Company can be legally required to furnish services in

the Town of Andersonville, it must be under that provision, and the services required must be "such public service and facilities as may be reasonable and just." It is a rule well established in this State that in construing a statute it must, if possible, be given such construction as will not create any conflict with the constitution, State or Federal. That rule is established in the Federal courts, and in all of the States, so far as I am aware. The same fundamental principles as to the Public-Service Commission's control over railroads apply in the present case. In I. C. C. v. Oregon-Washington R. Co., 288 U. S. 14, 41 (supra), the Public-Service Commission of the State of Washington issued an order requiring a railroad company to build a line of railroad which the commission deemed essential for the public benefit. The railroad was already serving a portion of that State. The Supreme Court stated: "The railroads, though dedicated to a public use, remain the private property of their owners, and their assets may not be taken without just compensation. The transportation act has not abolished this proprietorship. State courts have uniformly held that to require extension of existing lines beyond the scope of the carrier's commitment to the public service is a taking of property in violation of the Federal constitution. The decisions of this court will be searched in vain for the announcement of any principle of constitutional interpretation which would support the order of the commission. The statements in New England Divisions Case, 261 U. S. 184 (43 Sup. Ct. 270, 67 L. ed. 605), and Dayton-Goose Creek Ry. v. United States, 263 U. S. 456 (44 Sup. Ct. 169, 68 L. ed. 388), in respect of the purposes of the transportation act, on which appellants rely, must be read having in mind the situations there presented and the nature of the orders approved. Care was taken in those cases to demonstrate that the sections upheld did not, in application, go beyond the regulation of rates and the disposition of the excess over a fair return collected by a carrier, and it was shown that no taking or confiscation of property resulted. Those decisions are far from sustaining the validity of an order which seeks to require the investment of millions of dollars in a new venture in undeveloped areas. Such a compulsion imposes upon the carrier and its property 'burdens that are not incident to its engagement.' Northern Pacific Ry. Co. v. North Dakota, 236 U. S. at p. 595"

(35 Sup. Ct. 429, 59 L. ed. 735). If a construction be given to the above-quoted section of the Georgia statute other than the one suggested by the Oregon-Washington R. Co. case, supra, it would clearly be in violation of the due-process clause of both State and Federal constitutions, and the statute would be void. Therefore it seems clear that the Georgia Public Service Commission was without power to require extension of service in the present case.

It is argued that the action of the Public-Service Commission is not to require an extension. That contention, as I view the facts, is not tenable. The evidence is undisputed that the Georgia Power Company is not serving the Town of Andersonville with electric power or light. The fact that the company had a transmission line running very near to its corporate limits is far from the fact of serving the community with power and lights. If the court should construe these facts to mean furnishing service, it would doubtless find itself in a dilemma as to what distance is near enough to be considered sufficient to fall within the constitutional limitations. The resolution of the General Assembly which brought about the action of the Public-Service Commission adds nothing to the power of the commission. It was not intended to do such. It merely directed the Public-Service Commission to act within its constitutional limitations. If it had been intended as mandatory, that resolution is subject to the same constitutional limitations, and in such circumstances the resolution itself would be unconstitutional.

Presiding Justice BECK concurs in this dissent.

### ON MOTION FOR REHEARING.

GRAHAM, J. I vote to refuse the motion, and that a rehearing in the case be denied. Also I wish to be permitted to file the following:

I concur in the majority opinion in this case. At the time the Georgia Power Company and its constituent companies were chartered, the general law of the State provided, as set out in the Code, § 93-307, that the Public-Service Commission of the State should have general supervision of public utilities, including light and power companies, and the power "to require all common carriers and other public-service companies under its supervision to establish and maintain such public service and facilities as may

be reasonable and just." The Georgia Power Company accepted its charter subject to this general law and it became a part of its charter. *West End & Atlanta St. R. Co.* v. *Atlanta Street R. Co.*, 49 *Ga.* 151; Atlantic & Gulf R. Co. v. Georgia, 98 U. S. 359 (25 L. ed. 185). The fourteenth amendment to the constitution of the United States is not violated by subjecting a corporation to the general laws in force at the time of its incorporation. Interstate Consolidated Street Ry. Co. v. Massachusetts, 207 U. S. 79 (28 Sup. Ct. 26, 52 L. ed. 111, 12 Ann. Cas. 555); Capital City Dairy Co. v. Ohio, 183 U. S. 238 (22 Sup. Ct. 120, 46 L. ed. 171). It not appearing that the order of the commission in this case is either unreasonable or unjust, it does not lie in the power company to question the same.