# CITY OF ATLANTA *et al.* v. ATLANTA GAS-LIGHT COMPANY *et al.*

1. The Railroad Commission of this State has by statute authority to fix just and reasonable gas rates to be paid by the consumers to the corporation owning or operating public gas plants.

2. An order of the railroad commission fixing gas rates is presumed to be valid, but may be attacked in the courts on the ground that it is unjust and unreasonable, or void for other cause; and where such order

is attacked as being void, the burden of proof is upon the party attacking it.

3. Under the pleadings and the evidence the trial judge was authorized to hold that the order of the railroad commission was valid; and there was no error in refusing an injunction.

No. 1193. SEPTEMBER 27, 1919.

Petition for injunction.    Before Judge Littlejohn.    Fulton superior court.    September 27, 1918.

*J. L. Mayson, S. D. Hewlett, R. R. Arnold, C. E. Cotterill,* and *E. E. Pomeroy,* for plaintiffs.

*Smith, Hammond & Smith, Jones & Chambers,* and *James K. Hines,* for defendants.

HILL, J.    The Atlanta Gas-Light Company petitioned the railroad commission of Georgia, in April, 1918, for authority to increase its gas rates in the City of Atlanta.    Due notice of the application was given to the City of Atlanta and the citizens thereof; and pursuant to such notice a public hearing was had by the commission, at which the city and citizens appeared by counsel and opposed the granting of the proposed increase in rates.    At the conclusion of an elaborate hearing the commission granted an increase in the gas rates; and the present suit is brought by the City of Atlanta and its citizens against the Railroad Commission of Georgia and the Atlanta Gas Light Company, to enjoin, as void, the order thus promulgated by the commission.    The trial judge, after hearing evidence, decided in effect that the challenged order was not unreasonable and void, and refused an injunction; and the plaintiffs in error excepted.

The Civil Code of 1910, § 2631 (Acts 1878-9, p. 127), provides that "The railroad commissioners are required to make for each of the railroad corporations doing business in this State, as soon as practicable, a schedule of just and reasonable rates of charges for transportation of passengers and freights and cars on each of said railroads; and said schedule shall, in suits brought against any such corporation, wherein is involved the charges of any such corporation for the transportation of any passenger or freight or cars or unjust discrimination in relation thereto, be deemed and taken in all the courts of this State as sufficient evidence that the rates therein fixed are just and reasonable rates of charges for the transportation of passengers and freights and cars upon the railroads; and said commissioners shall, from time to time and as often as the

circumstances may require, change and revise such schedules." And section 2662, codified from section 5 of the act of 1907 (Acts 1907, p. 72), amending the act of 1879, declares that "The powers and duties hereinbefore conferred by law upon the railroad commission are hereby extended and enlarged, so that its authority and control shall extend . . over gas and electric-light and power companies, corporations or persons owning, leasing, or operating public gas plants or electric-light and power plants furnishing service to the public." It will thus be seen that the legislature has conferred on the railroad commissioners the power and authority to make just and reasonable gas rates. Orders of the railroad commission fixing rates are presumed to be valid, just and reasonable. The courts may inquire into the validity of rates prescribed by the railroad commission; and where such rates are attacked in the courts for one cause or another, such, for instance, as that the railroad commission is without authority to make them, or that they are not just and reasonable, the burden is upon the plaintiff, or attacking party, to show that the rates are void. *Union Dry Goods Co.* v. *Ga. Public Service Corp.,* 142 *Ga.* 841 (83 S. E. 946), s. c. 145 *Ga.* 658 (89 S. E. 779), s. c. 248 U. S. 372 (39 Sup. Ct. 117, 63 L. ed.); *Southern Ry. Co.* v. *Atlanta Stove Works,* 128 *Ga.* 207 (57 S. E. 429); Interstate Commerce Com. v. Union Pacific R. Co., 222 U. S. 541 (32 Sup. Ct. 108, 56 L. ed. 308); L. & N. R. Co. v. United States, 238 U. S. 1 (3), 11 (35 Sup. Ct. 696, 59 L. ed. 1177); R. Com. of La. v. Cumberland Tel. Co., 212 U. S. 414 (29 Sup. Ct. 357, 53 L. ed. 577); *R. Com.* v. *L. & N. R. Co.,* 140 *Ga.* 817, 832-3 (80 S. E. 327, L. R. A. 1915E, 902, Ann. Cas. 1915A, 1018).

No fixed or arbitrary rule for rate making has been prescribed by law. Many elements may enter into the fixing of just and reasonable rates—those that are just and reasonable both to the corporation and to the public. Each case must in a measure stand upon its special facts. In the following case the Supreme Court of the United States has clearly set forth some of the elements entering into the question of rate making. In Smyth v. Ames, 169 U. S. 466 (18 Sup. Ct. 418, 42 L. ed. 819), it was held: "The basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for

the convenience of the public; and in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stocks, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience; and on the other hand, what the public is entitled to demand is that no more be exacted from it for the use of the public highway than the services rendered by it are reasonably worth." Mr. Justice Harlan, in delivering the opinion of the court said: "A corporation maintaining a public highway, although it owns the property it employs for accomplishing public objects, must be held to have accepted its rights, privileges, and franchises subject to the condition that the government creating it, or the government within whose limits it conducts its business, may by legislation protect the people against unreasonable charges for the services rendered by it. It can not be assumed that any railroad corporation, accepting franchises, rights, and privileges at the hands of the public, ever supposed that it acquired, or that it was intended to grant to it, the power to construct and maintain a public highway simply for its benefit, without regard to the rights of the public. But it is equally true that the corporation performing such public services and the people financially interested in its business and affairs have rights that may not be invaded by legislative enactment in disregard of the fundamental guarantees for the protection of property. The corporation may not be required to use its property for the benefit of the public without receiving just compensation for the services rendered by it. How such compensation may be ascertained, and what are the necessary elements in such an inquiry, will always be an embarrassing question. As said in the case last cited: 'Each case must depend upon its special facts; and when a court, without assuming itself to prescribe rates, is required to determine whether the rates prescribed by the legislature for a corporation controlling a public highway are, as an entirety, so unjust as to destroy the value of its property for all the purposes for which it was acquired, its duty is

to take into consideration the interests both of the public and of the owner of the property, together with all other circumstances that are fairly to be considered in determining whether the legislature has, under the guise of regulating rates, exceeded its constitutional authority, and practically deprived the owner of property without due process of law. . . The utmost that any corporation operating a public highway can rightfully demand at the hands of the legislature, when exerting its general powers, is that it receive what, under all the circumstances, is such compensation for the use of its property as will be just both to it and to the public.' We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property." And to the same effect are the cases cited supra. The attack in the instant case on the order of the commission is by the consumers of gas in Atlanta, for the alleged reason, amongst others, that the rates are higher than the services are reasonably worth. The presumption is that the commission has considered all the elements entering into the making of just and reasonable rates.

It is insisted in this case that the order of the railroad commission is void, because it is not based upon any competent evidence submitted to the commission, and particularly because there was not submitted to the commission at the hearing any evidence showing, or tending to show, the kind, quantity, quality, age, condition, or other elements of value of the gas company's properties devoted to the public service in Atlanta; and consequently that under the ruling in the cases of Smyth v. Ames, supra, and subsequent cases elaborating the doctrine, viz., Knoxville v. Knoxville Water Co., 212 U. S. 1 (29 Sup. Ct. 148, 53 L. ed. 371), Willcox v. Consoli-

dated Gas Co., 212 U. S. 19 (29 Sup. Ct. 192, 53 L. ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034), Omaha *v.* Omaha Water Co., 218 U. S. 180 (30 Sup. Ct. 615, 54 L. ed. 991, 48 L. R. A. (N. S.) 1084), Cedar Rapids Gas Light Co. *v.* Cedar Rapids, 223 U. S. 655 (32 Sup. Ct. 389, 56 L. ed. 594), Minnesota Rate Cases, 230 U. S. 352 (33 Sup. Ct. 729, 57 L. ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18), Des Moines Gas Co. *v.* Des Moines, 238 U. S. 153 (35 Sup. Ct. 811, 59 L. ed. 1244), and Denver *v.* Water Co., 246 U. S. 178 (38 Sup. Ct. 278, 62 L. ed. 649), there was no legal basis upon which the railroad commission could determine whether the defendant gas company was then deriving a fair return upon the reasonable value of its property devoted to the public service at the time of the inquiry. The answer to this contention is, as already observed, that the presumption is in favor of the validity of the order fixing the rate, and the burden of showing that it was void is upon the party attacking the rate. The evidence submitted to the court upon the trial, though voluminous, was insufficient to show that the rate was unreasonable, unjust, or arbitrary. Another contention was that the order was void on the ground that it was adopted because "of an emergency arising out of national conditions existing at this time." It was shown on the trial that on account of the advance in material, wages, the cost of operation, additions, etc., the expenses of the corporation had enormously increased on account of war conditions, and that its net income had correspondingly decreased, etc. It was to meet just such conditions, no doubt, that the legislature provided in the act of 1879, supra, that the "commissioners shall, from time to time and as often as the circumstances may require, change and revise such schedules" of rates. When circumstances are such that the price of everything else has increased, it may well be that the commission may see the necessity, under the mandate of the law, of increasing the price of gas to the consumers as being *required* by the *circumstances.* From a careful review of the entire record, and numerous authorities bearing upon the subject, we can not say that the judge erred in refusing to hold that the rate fixed by the order of the commission was unjust and unreasonable, or was greater than the service was reasonably worth to the consumer, under the then existing circumstances, or that it was void for any reason assigned. The trial judge did not err in refusing an injunction.

*Judgment affirmed. All the Justices concur.*