21674. SOUTHERN RAILWAY COMPANY v. GEORGIA PUBLIC SERVICE COMMISSION et al.

HEAD, Presiding Justice. 1. The law of Georgia recognizes the right to judicial review of orders of the Georgia Public Service Commission. *Georgia Power Co. v. Georgia Public Service Commission*, 211 Ga. 223 (85 SE2d 14). Where, as in the present case, judicial review is timely sought, the penalty provisions of the Georgia law (*Code Ann.* § 93-416) apply only to subsequent violations after the order of the commission has been "judicially established to be a lawful

order." Wadley Southern R. Co. v. Georgia, 235 U. S. 651, 669 (35 SC 214, 59 LE 405).

2. The Georgia Public Service Commission has power to prevent unjust discriminations and to require railroad companies in the conduct of their intrastate business to afford equal facilities in the transportation and delivery of freight. *Code* §§ 93-307, 93-309; *Augusta Brokerage Co. v. Central of Ga. R. Co.*, 121 Ga. 48 (48 SE 714); *Wadley Southern R. Co. v. State*, 137 Ga. 497, 508 (73 SE 741). Switching or side tracks located wholly within one State "are left within State control" under the Interstate Commerce Act (49 U.S.C.A. § 1 (22)). Interstate Commerce Commission v. Oregon-Washington Railroad & Navigation Co., 288 U. S. 14, 40 (53 SC 266, 77 LE 588).

3. The evidence, while not without conflict, is ample to support the finding by the commission that discrimination by the railroads against the complainant existed. "Neither the trial court, nor this court on review, will substitute its own discretion and judgment for that of the Public Service Commission where it has exercised its discretion in a matter over which it has jurisdiction, and neither court will interfere with a valid order of the Public Service Commission unless it be clearly shown that the order is unreasonable, arbitrary, or capricious." *Atlanta Motor Lines, Inc. v. Georgia Public Service Commission*, 211 Ga. 698 (88 SE2d 387). A like rule applies in the Federal courts as to orders of the Interstate Commerce Commission. The New England Divisions Case, 261 U. S. 184, 204 (43 SC 270, 67 LE 605). By neither the pleadings nor the evidence is it "clearly shown" that the order of the commission is unreasonable, arbitrary, or capricious.

4. The statutes creating the Georgia Public Service Commission, and the order of the commission in the present case, are not in violation of either the Federal or State Constitution, as an unlawful interference with the liberty of contract, or a taking of property without due process of law. *Railroad Commission of Ga. v. Louisville & Nashville R. Co.*, 140 Ga. 817 (80 SE 327); *Union Dry Goods Co. v. Georgia Public Service Corp.*, 142 Ga. 841 (83 SE 946); Louisville & Nashville R. Co. v. Mottley, 219 U. S. 467 (31 SC 265, 55 LE 297); Chicago, Burlington & Quincy

Railroad Co. v. McGuire, 219 U. S. 549 (31 SC 259, 55 LE 328) ; Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S. 372 (39 SC 117, 63 LE 309).

5. The railroads were without authority to suspend the voluntary service, or any part thereof, to Solvay's plant, provided under the terms of the 1902 contract, until after notice and a hearing by the Georgia Public Service Commission. In Western & Atlantic Railroad v. Georgia Public Service Commission, 267 U. S. 493, 496 (45 SC 409, 69 LE 753), in a unanimous opinion delivered by Mr. Chief Justice Taft, it was stated, with reference to the validity of Rule 14 of the Georgia Public Service Commission, in part as follows: "Rule 14 is a reasonable rule and the Commission was fully justified in refusing to sanction a discontinuance of service until a petition had been filed with the Commission and a showing made. . . It is said that the requirement of the continuance of the service deprived the Company of its property without due process of law, in violation of the Fourteenth Amendment, because the service rendered by the side-track was much greater in out-of-pocket cost than the compensation. This can not be sustained. The service has been rendered for years. It was a voluntary arrangement, and under its statutory powers (§ 2664, Georgia Code, 1910 [now § 93-308]) was made irrevocable by the Public Service Commission under Rule 14, except by consent of the Commission. The spur track was for a public purpose. Union Lime Co. v. C. & N. W. Ry. Co., 233 U. S. 211. The requirement that such a service should not be discontinued without notice and hearing was clearly within the police power of the State. Chicago & Northwestern R. R. Co. v. Ochs, 249 U. S. 416; Lake Erie & Western R. R. Co. v. Cameron, 249 U. S. 422; Railroad Commission v. L. & N. R. R. Co., 148 Ga. 442."

6. The trial court did not err in denying an interlocutory injunction.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., and Grice, J., who dissent.*

Argued May 15, 1962—Decided June 12, 1962—Rehearing denied July 11, 1962.

160

*Charles J. Bloch, Edgar A. Neely, Jr., Greene, Neely, Buckley & DeRieux,* for plaintiff in error.

*Eugene Cook, Attorney General, Paul Rodgers, Assistant Attorney General,* contra.

*David E. Wells, Richard D. Sanborn, Douglas W. Matthews, Reid W. Harris, Conyers, Fendig, Dickey & Harris,* for party at interest not party to record.

ON MOTION FOR REHEARING.

Southern Railway Company in its motion for rehearing asserts that, "there was an *allegation* of discrimination, there was no *evidence* of discrimination."

With reference to the use of Southern's "Turtle River" spur track by A. C. L., it was provided in part in the 1902 joint operating agreement (in the second paragraph of Subparagraph (b) of Paragraph 1, Record, p. 126) that, "the parties hereto shall jointly use the said tracks and terminal facilities for the transportation and movement of any and all business connected with the operation of the parties hereto . . . " In the 1958

operating agreement between Southern and A. C. L., with reference to the use by A. C. L. of Southern's "Turtle River" spur track, (the second paragraph of Paragraph 1, Record, p. 185), it is provided in part, "it being agreed that Coast Line will handle such cars to and from said plants of Brunswick Pulp & Paper Company and Olin Mathieson Chemical Corporation through said connection track and no other."

It is not disputed that Solvay located its plant on Southern's "Turtle River" spur track in 1955 while the 1902 operating agreement was in full force and effect. In Paragraph 5 of Solvay's complaint (Record, p. 119) it is alleged in part: "5. After having so terminated the agreement of 1902, the said carriers, Southern and ACL, entered into a new agreement whereby ACL was permitted to operate on Southern's Turtle River spur for the purpose of serving all other shippers located thereon with the single exception of Solvay." This allegation of Solvay's complaint was admitted by both Southern and A. C. L.

As set forth in our statement of facts, Solvay alleged in Paragraph 6 of its complaint (Record, p. 120) that, "By the discontinuance of the service previously afforded by said railroads the operation from Solvay's plant to the Hercules Powder Company plant located on ACL tracks at Brunswick is changed from an intraterminal switch at the rate of $19.18 to an interterminal switch, the charge for which is $26.38 (an increase of $7.20)." In its answer to Paragraph 6 of Solvay's complaint, Southern in its Paragraph 6 (Record, p. 151) alleged: "Answering the allegations of Paragraph 6, this defendant admits that cancellation of the 1902 agreement had the effect of limiting the complainant to the terminal facilities of a single railroad, and that the former intraterminal switch from complainant's plant to plant of Hercules Powder Company was superseded by an interterminal switch." A. C. L. in its answer to Paragraph 6 admitted the allegations of the paragraph, except that it denied that the injury to Solvay was caused by any fault on its part (Record, p. 155).

Chauncey H. Gibson, a witness for the complainant Solvay, testified (Record, p. 48) that under the tariffs on the A. C. L. from Olin Mathieson Chemical Corporation to the Hercules

Powder Company the charge was $19.18, and that the charge from Solvay's plant for like services by Southern was $26.40. It appears from the language of the 1958 operating agreement that there is "built-in" discrimination in the contract itself, wherein A. C. L. is permitted to serve all shippers on the "Turtle River" spur track other than Solvay. The answer of the defendants admitted that the charge to Solvay was changed from an intraterminal switch to an interterminal switch charge, and the testimony of the witness Gibson shows that the difference in the two charges, between intraterminal and interterminal switching, is $7.20 per car. From the language of the 1958 agreement, the admissions of the railroads, and the testimony of the witness Gibson, the commission was amply authorized to find that discrimination existed in favor of Solvay's competitor, Olin Mathieson Chemical Corporation.

The issue before the Public Service Commission was whether or not the 1958 contract between Southern and A. C. L., and operations thereunder by them, resulted in discrimination in freight rates against Solvay Chemical Corporation. The commission determined that discrimination existed and that it should be eliminated.

Southern Railway Company insists in its motion for a rehearing that we have overlooked, and not given effect to, Rule 22 of the commission, as follows: "No regulation of the Commission shall be construed as requiring or authorizing the use of any property of one railroad company by another railroad company, for any purpose whatever, without the consent of the owner of such property."

The order of the commission does not require any additional use of Southern's "Turtle River" spur track by A. C. L., since the order is in the alternative. It is stated that the discrimination could be removed by the railroads rendering the same service to Solvay as is presently being furnished Brunswick Pulp & Paper Company and Olin Mathieson Chemical Corporation. This would involve some additional use by A. C. L. of Southern's "Turtle River" track. It is further provided, however, that the discrimination can be eliminated by an adjustment in the freight charges so that Solvay will be charged no more

by Southern than is charged by A. C. L. for the same service rendered to Olin Mathieson Chemical Corporation. In addition to that part of the order quoted in our statement of facts, the commission provided in paragraph 2 as follows: "Any tariff publication necessary to effect such removal of discrimination may be made effective on one day's notice to the Commission and to the public." Under these facts Rule 22 is not involved and is not applicable to the order of the Commission.

*Motion for rehearing denied. Duckworth, C. J., and Grice, J., dissent.*

DUCKWORTH, Chief Justice, dissenting. The majority rely upon Rule 14 of the commission and the decision in Western & Atlantic Railroad v. Georgia Public Service Commission, 267 U. S. 493, supra, upholding that rule as against an attack based upon the Constitution. In doing this, I think they fall into two errors. First of all, Rule 22 of the commission is the relevant and controlling rule here. Rule 22 provides that "no regulation of the Commission shall be construed as requiring or authorizing the use of any property of one railroad company by another railroad company for any purpose whatever without the consent of the owner of such property." This rule simply respects the Constitution and the rights of private property. It is a condition put upon all rules including Rule 14 by the commission itself. Respect for Rule 22 forbids a requirement by any rule, including Rule 14, that the private property belonging to one railroad company be used by another railroad company without the consent of the owner of such property. Every rule of construction known to the law demands that the two rules be construed together and that all other rules be limited as expressly stated in Rule 22. Thus construed none of them means that property of one railroad company can be used by another without the consent of the owner. That is precisely what the commission and the majority of this court has done in defiance of Rule 22 upon the solitary ground of Rule 14. They compel Southern to allow the Coast Line to use Southern's track without the consent of, and over objection of Southern that its private property be thus used by another.

To contend as the majority does that the Supreme Court de-

cision in Western & Atlantic Railroad v. Georgia Public Service Commission, 267 U. S. 493, supra, is even remote authority for that ruling is to manifest a glaring misconception of what that case ruled. There, the property involved (a spur track) was the property of the same railroad, which, under Rule 14, the owner railroad company was required to use itself. There, a customer formerly served by the railroad involved complained because the railroad had ceased to use *its property* to give the complainant the service as before. The objection of the railroad was not, as here, that it was being required to allow, against its will, use of its property by another railroad, but that objection was that its spur track was out of repair, unsafe, and it would be expensive to repair it. That decision amounts to no more than upholding the authority of the commission to compel the railroad company to use its own property as a means of rendering services to its shipper-customers. There is no express or implied ruling in that case on the issue here, which in no way involves the use by Southern of its own property as was true there. Here the issue involved is the compulsion by the commission of the Southern against its wish to allow; the Coast Line to use Southern's property. No such question as we now have was ruled upon in *Railroad Commission of Ga. v. Louisville & Nashville R. Co.*, 140 Ga. 817 (80 SE 327); *Union Dry Goods Co. v. Ga. Public Service Corp.*, 142 Ga. 841 (83 SE 946); Louisville & Nashville R. Co. v. Mottley, 219 U. S. 467, supra; Chicago, Burlington & Quincy R. Co. v. McGuire, 219 U. S. 549, supra; or Union Dry Goods Co. v. Ga. Public Service Corp., 248 U. S. 372, supra; all of which dealt with the power of the commission to require use of property by the owner to render service to the public.

The construction placed upon Rule 14 would render it clearly unconstitutional as contended, but it is the construction and not the rule, when given its true meaning, that offends both the State and Federal constitutional protection of private property.

Nobody questions the authority of the commission to prevent discrimination by any railroad against any of its customers, but it is a shocking error to stretch this perfectly sensible and just rule to the extent of causing it to require a railroad company to

surrender its own property to another railroad in order that one desiring to patronize that other road might not be discriminated against by that road, and not the road that owns the property. If the majority ruling stands, it spells the death knell to private property, but I believe, if not now, later, that ruling will fall because of the rank injustice it inflicts. 'Til now I had thought that when parties to a contract had terminated it in strict accord with its expressed terms, they were thereupon released from its obligations. But the contract of 1902 between these railroads whereby Southern allowed the Coast Line to use its tracks, which is here involved, expressly provided for its termination by either party, and it was so terminated, and they were both satisfied that it had ended, and actually executed another but different contract, which disallowed further use by the Coast Line of property belonging to Southern which is here involved. The order of the commission which the majority uphold, is an absolute obliteration of that cancellation contrary to the will of the only parties to the contract and its cancellation. And this for no better reason or excuse than that a shipper who might choose some day to ship by Coast Line which does not have this facility, and hence would charge the shipper more than Southern, which owns the facility would charge. Will they usurp further power to compel Southern to allow the Coast Line to use its cars because they are better and thereby insure the customers of Coast Line the benefit of such better equipment?

I have only touched decisive points in this dissent because I believe they demonstrate the dangerous error of the majority ruling.

GRICE, Justice, dissenting. As I view it, the fact that the commission's order is in the alternative does not give it validity, but emphasizes its violation of Rule 22. The effect of either alternative requires use of Southern's property by A. C. L. without its consent. To require Southern either to permit A. C. L. to use its tracks or, upon failure, to suffer a penalty by rate adjustment, as the facts here show, is indeed a Hobson's Choice —in reality no choice at all.

As the owner of the tracks involved here, Southern should

be allowed to exercise its property rights without any such penalty. I certainly do not consider that to be unlawful discrimination.

The dissent of Chief Justice Duckworth, with which I agree, was prepared prior to the addition made to the opinion upon consideration of motion for rehearing. My dissent is written afterwards, and I am authorized to state that he concurs in it.