## 29180. GEORGIA POWER COMPANY v. ALLIED CHEMICAL CORPORATION et al.

HALL, Justice.

Eighteen corporate users of electrical power supplied by the Georgia Power Company filed an equitable suit in the Fulton Superior Court against the Georgia Public Service Commission and the Georgia Power Company. The complaint sought an injunction against orders of the commission on the grounds that the rate structure was unreasonable and the increase in the annual revenue which the utility was authorized to collect from its customers, that is, the rate level, was unreasonably high. The Georgia Power Project and the Atlanta Labor Council intervened as additional plaintiffs. The Georgia Power Company filed a motion to dismiss the complaints for failure to state a claim upon which relief could be granted. The trial court overruled the motion and certified the question for review. The issue here is whether consumers of electricity supplied by a public utility have standing to seek to enjoin the enforcement and collection of rates set by an order of the Georgia Public Service Commission on the ground that the level of these rates is *unreasonably high.* We answer this question "No."

1. The Georgia Constitution and laws impose a duty on the Georgia Public Service Commission to make "just and reasonable rates," and at the same time provide that the determination of "what are just and reasonable rates and charges is vested *exclusively* in the Public Service Commission." Code § 93-309; see also Code Ann. § 2-2703. "Utility rate making is legislative in nature..." *Southern Bell Tel. &c. Co. v. Georgia Pub. Serv. Commission,* 203 Ga. 832 (5) (49 SE2d 38). "[W]hen the commission establishes a rate, such act is legislative in character, and binds all parties concerned in the same manner as if the rate had been fixed by an act of the General Assembly." *Georgia Pub. Serv. Commission v. Atlanta Gas Light Co.,* 205 Ga.

863, 883 (55 SE2d 618).

What is a "just and reasonable rate" is basically a matter of policy.[1] It involves an intelligent estimate of present and probable future values and is at best an approximation. Holmes has said that "All values are anticipations of the future." Lincoln v. Commonwealth, 164 Mass. 368, 378.

Recognizing that rate-making is essentially a legislative function, we must determine to what extent judicial review of the legislative decision is available at the instance of the utility company or of the consumer.

A public utility has standing to challenge a rate schedule on the ground that the schedule is so low that it is confiscatory and denies the utility substantive due process. *Southern Bell Tel. &c. Co. v. Georgia Pub. Serv. Commission,* 203 Ga. 832, supra. The rate set must reach the point of confiscation for the utility to show a legally protected interest. St. Joseph Stock Yards Co. v. United States, 298 U. S. 38 (56 SC 720, 80 LE 1033); *Georgia Power Co. v. Georgia Pub. Serv. Commission,* 231 Ga. 339 (201 SE2d 423). On the other hand, a consumer has standing to challenge a rate schedule on the ground that the schedule discriminates against the consumer or a class of consumers in violation of the equal protection guarantees of the state and federal constitution. *Gas Light Co. v. Georgia Power Co.,* 225 Ga. 851 (171 SE2d

---

[1]"The judicial process is too principle-prone and principle-bound — it has to be, there is no other justification or explanation for the role it plays. It is also too remote from conditions, and deals, case by case, with too narrow a slice of reality. It is not accessible to all the varied interests that are in play in any decision of great consequence. It is, very properly, independent. It is passive. It has difficulty controlling the stages by which it approaches a problem. It rushs forward too fast, or it lags; its pace hardly ever seems just right. For all these reasons, it is, in a vast, complex, changeable society, a most unsuitable instrument for the formation of policy." Bickel, The Supreme Court and the Idea of Progress, 175 (1970).

615).[2] But the consumer's remedy against the general application of allegedly unreasonably high rates lies at the ballot box.

This follows from the fact that under our state law a consumer cannot establish standing to challenge the utility's rates on the ground that they are generally too high. Professor Freund has said that the concept of standing is "among the most amorphous in the entire domain of public law."[3] Certainly it is inextricably related to the merits of the case. To have standing to institute a claim, the consumer must have a legally protected interest, or "legal interest standing." "A litigant ordinarily has standing to challenge governmental action of a sort that, if taken by a private person, would create a right of action cognizable by the courts. . . Or standing may be based upon an interest created by the constitution or a statute. . . But if no comparable common-law right exists and no such constitutional or statutory interest has been created, relief is not available judicially." Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U. S. 123, 152 (71 SC 624, 95 LE 817) (Frankfurter, J., concurring).

There is no statutory nor common law right in a Georgia consumer to obtain judicial review of the reasonableness of a rate order made by the Public Service Commission. The Georgia Administrative Procedure Act of 1964 contains a statutory judicial review procedure; however the legislature expressly exempted the Public Service Commission from the terms of the Act. Code Ann. §§ 3A-120 and 3A-102. Therefore, it follows that the consumer must have a legally protected interest under the Georgia or Federal Constitutions in order to have

---

[2]"Public policy prohibits a public utility from enforcing any contract or agreement repugnant to its public duty to serve all persons similarly situated impartially, uniformly and without discrimination." 225 Ga. 851 (headnote).

[3]Quoted in Albert, Standing to Challenge Administrative Action, 83 Yale L. J. 425 n. 1 (1974).

"legal interest standing" to challenge a rate order made by the commission. He certainly has an interest in escaping invidious discrimination, and thus he may bring a claim grounded in equal protection, as we have seen above. Similarly, he may invoke his rights to procedural due process where appropriate.[4] But an attack on rates solely because they are alleged to be too high is grounded in substantive due process. It is a claim that the consumer has been deprived of his "property" without due process of law. And such a claim must fall for the simple reason that the consumer has no "property" right in the rate he pays for utilities.[5] Thus there cannot be general rate regulation by lawsuit.

Therefore, we rule today that plaintiffs' attempt to prosecute this suit must fail because their challenge to the rate structure is not that it is discriminatory, but merely that it is too high — a challenge which presents an issue which is non-justiciable because it has been

---

[4]There being no adequate remedy at law, any judicial remedy must be in equity. *McIntyre v. Harrison,* 172 Ga. 65 (157 SE 499). Venue for a suit against the commission is Fulton County. Code § 93-211. "The establishment of a rate is the making of a rule for the future, and therefore is an act legislative not judicial in kind." *Georgia Pub. Serv. Commission v. Atlanta Gas Light Co.,* 205 Ga. 863, 875, supra. The suit for injunction in the Superior Court is therefore a "de novo proceedings." *Georgia Pub. Serv. Commission v. General Telephone Co. of Ga.,* 227 Ga. 727 (182 SE2d 793). On the other hand, where an administrative body acts in a judicial capacity there is a review of the record by the writ of certiorari. *Southeastern Greyhound Lines v. Georgia Public Service Commission,* 181 Ga. 75 (181 SE 834). But as to the former (legislative rate-making), "neither the trial court, nor this Court on review will substitute its own discretion and judgment for that of the Public Service Commission, where it has exercised its discretion in a matter over which it has jurisdiction." *Georgia Pub. Serv. Commission v. Smith Transfer Co., Inc.,* 207 Ga. 658, 659 (63 SE2d 653).

[5]See note 6, infra.

entrusted solely to the legislature, a co-ordinate branch of government.

The non-justiciability of this issue was well expressed in a 1915 opinion of the Supreme Court of Minnesota: "Whether done by the nation, state or municipality, it [rate-making] is by representatives elected by the people and accountable to them. Such being the case, there is little danger of excessive rates being fixed. But if, perchance, it should happen, the remedy of the public is by appeal to the rate-fixing body, or, if necessary, by a change in its membership." St. Paul Book & Stationery Co. v. St. Paul Gas Light Co., 130 Minn. 71 (153 NW 262).[6] The pertinence of this statement has been reinforced by the institutionalization of majoritarianism through the one-person, one-vote rule of the apportionment cases. It is said that Public Service Commissions and legislatures should be "collectively responsive to the popular will." Reynolds v. Sims, 377 U. S. 533, 567 (84 SC 1362, 12 LE2d 506). That is what representative government is all about.[7]

In a recent decision, the Supreme Court of the United States has said that "Lack of standing . . . does

---

[6]The organic law of Minnesota provided that the rates set must be "just and reasonable." This same requirement is found in Alabama (Code of 1958, Title 48, § 52), Kentucky (Kentucky Revised Statutes Ann. § 278.270) and New Mexico (New Mexico Statutes 1953 Ann. § 68-6-1). The highest courts of these states followed the reasoning of the Minnesota opinion that a consumer has no property right in the reasonableness of the rate, that rate-making is a legislative function and that his remedy lies in the political process. City of Birmingham v. Southern Bell Tel. & Tel. Co., 234 Ala. 526 (176 S 301); City of Middlesboro v. Louisville & Nashville R. Co., 252 SW2d 680; State v. Mountain States Tel. & Tel. Co., 54 N. M. 315 (224 P2d 155).

[7]Any member of the public has a right to intervene and appear in hearings before the Public Service Commission. See Code Ann. §§ 93-307 and 93-307.1. Rule 14.1 and 15, General Rules of the Commission.

not impair the right to assert his views in the political forum or at the polls. Slow, cumbersome and unresponsive though the traditional electoral process may be thought at times, our system provides for changing members of the political branches when dissatisfied citizens convince a sufficient number of their fellow electors that elected representatives are delinquent in performing duties committed to them." United States v. Richardson, 418 U. S. 166 (94 SC 2940, 41 LE2d 678). It is inescapable that "unrestricted tax payer or citizen standing" to air generalized grievances about the conduct of legislative matters "would significantly alter the allocation of power" and result in "a shift away from a democratic form of government." *Id.*, p. 188. To hold otherwise "would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislative and open the Judiciary to an arguable charge of providing 'government by injunction' ". Schlesinger v. Reservists Committee to Stop the War, 418 U. S. 208 (94 SC 2925, 41 LE2d 707). It would also imply a lack of trust on the part of the Judiciary in the political process. It should be noted that the "political question doctrine" is alive and well as illustrated by a recent decision of the Supreme Court of the United States: "The voting rights cases, indeed, have represented the Court's effort to strengthen the political system by assuring a higher degree of fairness and responsiveness to the political processes, not the assumption of a continuing judicial review of substantive political judgment entrusted expressly to the coordinate branches of government." Gilligan v. Morgan, 413 U. S. 1, 11 (93 SE 2440, 37 LE2d 409). The latter approach would " 'involve a serious conflict with a "coordinate political department; . . . a lack of judicially discoverable and manageable standards for resolving [the question]; . . . the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; . . . the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; . . . unusual need for unquestioning adherence to a political decision already made; [and] the potentiality of embarrassment from

multifarious pronouncements by various departments on one question." Baker v. Carr, supra, 369 U. S. p. 217.' " *Id.,* p. 8-9.

In summary, the courts have no jurisdiction over utility rates in the absence of a statutory remedy unless some specific constitutional right other than an asserted "substantive due process right of a consumer" is involved.[8]

2. It is also contended that irrespective of the substantive due process and equal protection provisions of the federal and Georgia Constitutions, the right to and standard for judicial review are found in the section of the Georgia Constitution which provides that "The power and authority of regulating railroad freight and passenger tariffs and of charges of public utilities for their services, of preventing unjust discriminations, and requiring reasonable and just rates of freight and passenger tariffs and of charges of public utilities, are hereby conferred upon the General Assembly, whose

---

[8]"The constitutional provision against taking property for public use without just compensation prevents the enforcement against a public service corporation of a confiscatory rate, and the question whether or not the rate is confiscatory is always a question which the public service corporation can have determined in the courts. Because of the right of the corporation to resort to the courts, it has, in some instances, been assumed that the consumer had a right, also, to resort to the courts if the rate was unreasonably high. But the courts have not admitted such right. The courts have no jurisdiction over rates as such, and unless some constitutional right is involved so as to give them jurisdiction, the courts have no power to interfere with a rate which is, in fact, sanctioned by the legislature. There has been some contention that a rate which is unreasonably high interferes with the constitutional rights of the consumer, the same as one unreasonably low interferes with those of the corporation, but this contention has not been accepted." Annot. Public Utility — Legislative Rate, 12 ALR 404-405.

duty it shall be to pass laws from time to time, to regulate such tariffs and charges, to prohibit unjust discriminations by the various railroad and public utilities of this state, and to prohibit said railroads and public utilities from charging other than just and reasonable rates and to enforce the same by adequate penalties, provided, nevertheless, that such power and authority shall never be exercised in any way to regulate or fix charges of such public utilities as are or may be owned or operated by any county or municipality of this State; except as provided in this Constitution." Code Ann. § 2-2401. In other words the contention is that any utility rate order is subject to generalized grievances and can be tested in the courts as to its general justness and general unreasonableness by the utility or by a consumer. This novel contention would in effect turn the judiciary into a general oversight committee on utility rates, and we decline to adopt it.

As the following discussion will show, the inherent power of the legislature to regulate is sufficiently broad that the above-quoted language adds nothing of benefit to plaintiffs; it certainly cannot be read as the source of the judicial review they seek. It must be remembered that the "inherent powers of our State General Assembly are awesome. Unlike the United States Congress, which has only delegated powers . . . typically the state legislatures are given by the people the full lawmaking powers; . . . [and are] 'intrusted [sic] with the general authority to make laws at discretion' . . . The legislature is absolutely unrestricted in its power to legislate, so long as it does not undertake to enact measures prohibited by the State or Federal Constitution." *Sears v. State of Georgia,* 232 Ga. 547, 553-554 (208 SE2d 93); Code Ann. § 2-1920. The applicability of this principle to rate-making is demonstrated by the holding of this Court that "Independently of this provision [Code Ann. § 2-2401] of the constitution, the General Assembly possesses the inherent power to regulate public utilities . . . The legislative power of the State is vested in the General Assembly, which has power to make all laws and ordinances consistent with the Constitution of this State, and not repugnant to the Constitution of the United

States, which they shall deem necessary and proper for the welfare of the State." *Atlanta Terminal Co. v. Georgia Public Service Commission,* 163 Ga. 897, 898 (137 SE 556). This principle that rate-making is a matter of policy has historical support in the debates on the Constitutional Convention of 1877. The rate-making provision ("just and reasonable") of our Constitution, Code Ann. § 2-2401, was sponsored by the populist protagonist of the railroads, Robert Toombs, who said in support of the provision: "Let the legislature be left *free* to change the details of these restrictions as times change and as the necessities of the people change." Small's Debates, Constitutional Convention of 1877, p. 409. It was repeated again in 1944 when Attorney General Head pointed out that the 1877 provision only meant that "Public Utility service and transportation shall be regulated by the General Assembly." 1, Records of Constitutional Convention, 1943-44, p. 221. Finally, the latest decision of this Court holds that "unreasonableness" of a rate order challenged by the *utility* is not reviewable but that the test is whether it is "confiscatory and violative of substantive due process of law"; it also held that "This Court is not in the rate-making business." *Georgia Power Co. v. Georgia Pub. Serv. Commission,* 231 Ga. 339, 341, 344, 345 (201 SE2d 423).

The trial court and the appellees rely upon *City of Atlanta v. Atlanta Gas Light Co.,* 149 Ga. 405 (100 SE 439). There is dictum in that case indicating that courts may inquire whether a rate order is "just and reasonable"; however, the holding denied the consumers any relief and the issue of consumer standing was never raised nor decided. Furthermore, *City of Atlanta* quoted and grounded its decision upon Smyth v. Ames, 169 U. S. 466, which was a confiscation case based upon the substantive due process right of the *utility.* The fact that review of a rate order rests upon the due process or equal protection clauses and not upon "just and reasonable" provisions is stated in Federal Power Commission v. Natural Gas Pipe Line Co., 315 U. S. 575 (62 SC 736, 86 LE 1037). The Natural Gas Act of 1938 commands that the rates of natural gas companies subject to it "shall be just and reasonable." The Court held that this statutory

standard coincides with that of the Federal Constitution and "the courts are without authority . . . to set aside . . . [a rate] which is consistent with constitutional requirements. The Constitution does not bind rate-making bodies to the service of any single formula or combination of formulas . . . If the Commission's order . . . produces no arbitrary result, our inquiry is at an end." 315 U. S. p. 586. Acceptance of judicial review of just-ness and reasonableness of rate orders "is historically unjustified" and would "transfer to courts powers which, under the Constitution, belong to the legislative branch of government." 315 U. S. p. 601 (Black, Douglas, and Murphy, JJ., concurring). [I]f "courts have nothing to do with rate-making because that task was committed ex-clusively to the Commission, surely it is a usurpation of the Commission's function to tell it how it should discharge this task and how it should protect the various interests that are deemed to be in its, and not in our, keeping." 315 U. S. at 610 (Frankfurter, J., concurring). The dictum in *City of Atlanta* is in conflict with the uniform holdings of this Court,[9] the Supreme Court of the United States, and of most other states[10] that courts will not review the question of "unreasonableness" of a rate order unless it deprives the plaintiff of a legally protected interest[11] under the Georgia or Federal Constitution, and such language is hereby disapproved and will not

---

[9] *Southern R. Co. v. Georgia Public Service Com-mission,* 218 Ga. 157, 158 (127 SE2d 12); *J. & M. Transportation Co. v. Georgia Public Service Commission,* 217 Ga. 296, 298 (122 SE2d 227); *Atlanta Motor Lines v. Georgia Public Service Commission,* 211 Ga. 698 (88 SE2d 387); *Georgia Public Service Commission v. Atlanta Gas Light Co.,* 205 Ga. 863, 883 (55 SE2d 618); *Southern Bell Tel. & Tel. Co. v. Georgia Public Service Commission,* 203 Ga. 832 (5) (49 SE2d 38); *Georgia Public Service Commission v. Georgia Power Co.,* 182 Ga. 706, 715 (186 SE 839); *Hudspeth v. Hall,* 113 Ga. 4 (38 SE 358). See also note 4, supra.

[10] See note 6, supra.

[11] We rule here, of course, that there *is* no sub-stantive due process claim in the consumer.

hereafter be followed.

The trial court erred in overruling appellant's motion to dismiss.

*Judgment reversed. Nichols, C. J., Undercofler, P. J., and Judge Hugh D. Sosebee, concur. Hill, J., concurs specially. Gunter and Ingram, JJ., dissent. Jordan, J., disqualified.*

ARGUED SEPTEMBER 13, 1974 — DECIDED JANUARY 28, 1975 — REHEARING DENIED FEBRUARY 18, 1975.

*Troutman, Sanders, Lockerman & Ashmore, Carl E. Sanders, Tench C. Coxe, Norman L. Underwood, David W. Pollard,* for appellant.

*Sutherland, Asbill & Brennan, James P. Groton, Edward J. Grenier, Jr., Alfred C. Aman, Jr., Larry W. Thomason, David Schlissel, Robert J. Castellani,* for appellees.

HILL, Justice, concurring specially.

The difficulty with this case as I see it, is that it is a de novo proceeding to determine what are just and reasonable rates. *Georgia Pub. Serv. Commission v. General Telephone Co. of Ga.,* 227 Ga. 727 (182 SE2d 793). The majority finds such a de novo proceeding to be judicially unmanageable, and in this I concur.

The *General Telephone* case arose out of the necessity of the facts of that case, which have now been eliminated by statute. Ga. L. 1972, p. 137 (Code Ann. § 93-307.1).

The *General Telephone* decision was predicated at least in part on *City of Atlanta v. Atlanta Gas Light Co.,* 149 Ga. 405 (100 SE 439), which the majority today disapproves. Instead of disapproving the latter case, I would disapprove its descendant, the *General Telephone* decision, eliminate the de novo aspect and thereby restore order and manageability to this process.

The elimination of the de novo proceeding and the return of manageability would avoid general rate regulation by lawsuit which the majority justifiably seeks to avoid.

In the absence of overruling the *General Telephone* decision, I concur in the judgment.

GUNTER, Justice, dissenting.

Appellees, corporate users of electrical power, contested before the Georgia Public Service Commission a rate increase sought by Georgia Power Company, the appellant. The commission entered an order granting a rate increase to the appellant, the appellees exhausted their procedural remedies before the commission, and the appellees then brought an action in superior court against the commission and the appellant which sought to enjoin the commission from enforcing its rate order and which sought to enjoin the appellant from charging the increased rates.

The appellant filed a motion to dismiss the complaint of the appellees for failure to state a claim. The trial judge overruled this motion, holding that appellees' complaint did state a claim for relief, but he certified his judgment for interlocutory appeal to this court.

The sole issue in this appeal is whether consumers of electricity supplied by a public utility have "standing" to enjoin the enforcement and collection of rates established by the Georgia Public Service Commission on the ground that such rates are not just and reasonable. Appellant contends that this issue is one of first impression in this state.

The Georgia Constitution (Code Ann. § 2-2401) provides: "The power and authority of regulating . . . charges of public utilities for their services, . . . and requiring reasonable and just . . . charges of public utilities, are hereby conferred upon the General Assembly, whose duty it shall be to pass laws . . . to prohibit . . . public utilities from charging other than just and reasonable rates . . ."

The Georgia Constitution further provides: "There shall be a Public Service Commission for the regulation of utilities, vested with the jurisdiction, powers and duties now provided by law or that may hereafter be prescribed by the General Assembly, not inconsistent with other provisions of this Constitution." Code Ann. § 2-2703.

In *City of Atlanta v. Atlanta Gas Light Co.,* 149 Ga. 405 (100 SE 439) (1919), this court stated the case at p. 406: "At the conclusion of an elaborate hearing the commission granted an increase in the gas rates; and the present suit is brought by the City of Atlanta and its citizens against the Railroad Commission of Georgia and the Atlanta Gas Light Company, to enjoin, as void, the order thus promulgated by the commission. The trial judge, after hearing evidence, decided in effect that the challenged order was not unreasonable and void, and refused an injunction." Then on page 407 this court ruled: "It will thus be seen that the legislature has conferred on the railroad commissioners the power and authority to make just and reasonable gas rates. Orders of the railroad commission fixing rates are presumed to be valid, just and reasonable. The courts may inquire into the validity of rates prescribed by the railroad commission; and where such rates are attacked in the courts for one cause or another, such, for instance, as that the railroad commission is without authority to make them, or that they are not just and reasonable, the burden is upon the plaintiff, or attacking party, to show that the rates are void [cites omitted]."

In *City of Atlanta v. Georgia R. & Power Co.,* 149 Ga. 411 (100 SE 442) (1919), this court said at page 413: "It thus appears that the legislature conferred on the railroad commissioners the power to make schedules of 'just and reasonable rates of charges' for service by electric light and power companies." At page 421 of the opinion the court held: "Under the pleadings and the evidence, the judge was authorized to hold that the order increasing the rates was not shown to be unreasonable or unjust or void on any ground of attack. Under such circumstances there was no error in refusing an injunction."

It is clear to me that these two cases, decided by this court in 1919, established the principle that customers of gas and electric public utilities regulated by the Georgia Public Service Commission have "standing" to attack Commission rate orders in the courts on the ground that they are "other than just and reasonable", a measurement or yardstick mandated by Art. IV, Sec. I,

Par. I (Code Ann. § 2-2401) of the Georgia Constitution.

Georgia's Constitution plainly states that it is the duty of the General Assembly to prohibit public utilities from charging other than just and reasonable rates. This Constitutional language, as I read it, means that utility consumers can attack rates established by the Commission in the courts as being "unjust and unreasonable," and such an attack raises a constitutional issue under the Georgia Constitution.

Established rates may be "unjust and unreasonable" to a public utility; and that amounts to constitutional confiscation under the Georgia Constitution. Established rates may be "unjust and unreasonable" to all customers or a particular class or group of customers of a public utility; and that amounts to constitutional extortion under the Georgia Constitution. We recently said: "We think that effective judicial review requires the commission to provide clear findings by a well-defined method or standard in reaching its conclusion as to what is a just and reasonable utility rate. Regardless of the method or standard employed by the commission, there remains the need for some means of testing the end result of the commission's action." *Georgia Power Co. v. Georgia Pub. Serv. Commission,* 231 Ga. 339, 342 (201 SE2d 423).

It is my view that judicial review is just as appropriate and necessary in "constitutional extortion cases" brought by utility customers as it is in "constitutional confiscation" cases brought by regulated utilities. I believe that Georgia's Constitution on this subject is unique in that it places a duty upon the General Assembly to enact statutes to prohibit "public utilities from charging other than just and reasonable rates."

I would therefore hold that the appellees have "standing" in the trial court, and that their complaint stated a claim, that claim being that the rate order attacked was "constitutionally extortionate" under the Georgia Constitution. And whether a rate order is just and reasonable or unjust and unreasonable, in constitutional terms, is an issue for initial decision in the trial court.

I would adhere to the language and ruling, as I interpret that decision, laid down by this court fifty-five

years ago in *City of Atlanta v. Atlanta Gas Light Co.,* supra.

I respectfully dissent.

INGRAM, Justice, dissenting.

This case is here on appeal from the judgment of the trial court holding the complaint states a claim upon which relief can be granted. I would affirm that judgment as I agree that there should be an evidentiary hearing in the trial court to determine whether the present rate order is "other than just and reasonable" as specified in the Georgia Constitution (Code Ann. § 2-2401).

It seems to me that if our Constitution protects the utility company from the confiscation of its property caused by an unreasonably low rate, it also protects a consumer from a confiscation of its property caused by an unreasonably high rate.

There is always a legal presumption that any rate order is reasonable, but whether it is or is not depends upon all the relevant facts and circumstances developed in a particular case. I agree the courts have no jurisdiction or expertise in the area of rate making and therefore should interfere only in plain and palpably clear cases of obviously unreasonable orders of the commission. But even in this narrow area of constitutional review, the final determination will depend on the evidence in each case and cannot be resolved as a matter of law. We have held the courts are available to determine whether a particular order is unreasonably low. See *Georgia Power Co. v. Georgia Pub. Serv. Commission,* 231 Ga. 339 (201 SE2d 423). If we presume to make this kind of judgment on a constitutional basis, we ought to be able, without additional difficulty, to decide whether a particular order is unreasonably high. To undertake the one and decline the other is, to my mind, a denial of equal protection of the law. Simple justice demands equality before the law. To rule the court is open to relieve the utility company from an unjust and unreasonable order but not the consumer mocks the constitutional protections which we cherish and herald as available to all who are aggrieved.

Suppose the evidence shows that the plaintiffs have

a valuable property right in a business that cannot operate without electricity and that the only place they can purchase electricity is from the defendant at a rate which is so unreasonably high and unjust that, in practical terms, it is confiscatory. In my opinion, this would interfere with the constitutional rights of the consumer and these rights can be protected in the courts in a case where the consumer has exhausted all available administrative remedies by appearing before the commission.

In summary, I conclude that if a rate order is subject to judicial review for being unreasonably low, it is subject to judicial review for being unreasonably high, and I would apply *City of Atlanta v. Atlanta Gas Light Co.,* 149 Ga. 405 (100 SE 439), as the trial court did in this case.