## 31879. SAVANNAH ELECTRIC & POWER COMPANY v. GEORGIA PUBLIC SERVICE COMMISSION et al.

HALL, Justice.

This appeal is brought by Savannah Electric & Power Company ("SEPCO") from an order of the superior court upholding the validity of a certain rate order set by the Public Service Commission for SEPCO.

During the spring of 1975, SEPCO applied to the Public Service Commission for authority to increase its rates by $6.675 million. Intervenors, Savannah Industry Energy Users Association ("SIEUA") entered the proceeding, which concluded in the commission's order of August 25, 1975, granting a rate increase of $3.8 million. SEPCO did not file suit challenging this award. Subsequently, however, the Consumer's Utility Counsel filed suit challenging certain procedures incident to the rate award, naming SEPCO and the commission as defendants. SEPCO then counterclaimed against Consumer's Utility Counsel challenging the constitutionality of the Act creating his office, and cross claimed against the commission alleging that the rate was unreasonable and confiscatory. Trial de novo in superior court was held in February, 1976.

The trial court's subsequent order first ruled that SEPCO's constitutional attack against the Consumers' Utility Counsel Act was good; and Consumers' Counsel was not entitled to participate in the proceedings (though by agreement of all parties, to obviate necessity for retrial, counsel did participate in making the record in the superior court). The court then found the rate set not to be

confiscatory nor a denial of due process or equal protection to SEPCO. We reversed the first ruling in *Bryan v. Ga. Public Service Comm.*, 238 Ga. 572 (1977). It was our initial opinion in the instant case, also released April 5, 1977, that SEPCO's appeal should be dismissed as premature, since our *Bryan* ruling will allow the trial court to consider for the first time Consumers' Counsel's argument that seeks to invalidate on procedural grounds some four months of the increased rate during 1975. (Upon finding him not to have a valid office, the superior court did not rule on this point.) It is these very 1975 figures *with* the increased rate which formed the primary basis for the trial court's decision of the confiscatoriness issue. Nonetheless, all parties—SEPCO, the commission, and Consumers' Counsel—urged this court that in their view *Bryan* had no effect upon the issue here, and the validity of the rate order was ripe for decision. Accordingly, we will adjudicate—now and for all time—the confiscatoriness vel non of this August 25, 1975 rate order, which was dealt with in the latter portion of the superior court's order from which this appeal was taken.

The principles governing this appeal are easily stated, though not so easily applied. "If a rate order issued by the commission does not authorize a regulated utility to earn an amount to sufficiently compensate its investors reasonably, to maintain its credit, to attract capital, and to maintain the requisite level of services, then it is the duty of the judiciary to set aside such rate order as confiscatory and violative of substantive due process of law." *Ga. Power Co. v. Ga. Public Service Comm.*, 231 Ga. 339, 341 (201 SE2d 423) (1973). However, there exists a presumption that the rate set by the commission is reasonable. Federal Power Comm. v. Hope Natural Gas Co., 320 U. S. 591, 602 (1944); *Ga. Power Co. v. Allied Chemical Corp.*, 233 Ga. 558, 572 (212 SE2d 628) (1975). The utility challenging the rate must carry the burden of showing clear confiscation. *Southern Bell Tel. & Tel. Co. v. Ga. Public Service Comm.* 203 Ga. 832 (7) (49 SE2d 38) (1948); *Ga. Public Service Comm. v. Ga. Power Co.*, 182 Ga. 706, 716 (186 SE 839) (1935).

Although eight separate enumerations of error are asserted, the thrust of SEPCO's argument here is that the

theoretical rate of return on common equity of some 11.57% which the commission allowed it, is lower than that recently allowed Georgia Power Company and lower than a rate which would allow SEPCO to repair its admittedly poor financial status, and therefore results in confiscation. In our view, the answer to this argument is that SEPCO is in fact doing substantially better under the new rate structure than the anticipated 11.57%. The trial court found, and the record supports, that for the calendar year ended December 31, 1975, SEPCO's actual return on common equity was 13.79% despite the fact that the rate increase had only been in effect for four months of that year. It is true that there was some evidence that 1975 was an atypical year; there were some projections that in 1976 the company *might* not do as well; and in 1976 there would probably be some expenses that were not incurred in 1975. However, it would also be true that in 1976 the company would have the benefit of the increased rate for the entire year, not for just a third of it. Moreover, nothing we might speculate about 1976 can alter the fact that for 1975 the rate of return was actually 13.79%. This is the actual "consequence" of the rate order; and as the Supreme Court wrote in the Hope case, the challenger must show that the rate increase is unreasonable "in its consequences." 320 U. S. at 602. SEPCO has not done this. Witness B. B. Knowles, a utility finance specialist, testified at trial that a reasonable rate of return on equity would be 12.75% to 15 %. The 13.79 % actually achieved falls well within the range, and not far from the 14.5 to 15 % range given by Professor Arthur Dietz which was the highest estimate given before the commission. Also before the commission State Senator John Riley testified that an "arbitrary" estimate would be that 11.5 % to 12 % would be reasonable.

SEPCO's evidence was certainly adequate to show that the company was financially distressed prior to the new rate order. However, the financial position has been substantially improved under the new order. SEPCO bonds have once again been rated by Moody's Investor's Service which had previously refused to list them; a dividend has been resumed at 10 cents and raised to 15 cents; SEPCO marketed in October, 1975, $20 million in

first mortgage bonds and $10 million in privilege stock; construction financing has been obtained for the formerly stalled Effingham plant and construction has been resumed on it; the stock price is up since the rate order from 7 1/4 to 9 3/8; and SEPCO is now current with its fuel bills which had been in arrears for some two years. It is also true that the interest the company must pay its bondholders and lenders is quite high; the dividend is far from its former level; and the sale of common stock does not seem feasible because the investor cannot be offered an attractive return on his money. Nonetheless, this company has been in financial straits for years, and the present rate order cannot be faulted because it has failed to cure all problems instantly.

The superior court testimony of SEPCO's own board chairman and chief executive officer was that ". . . all electric utilities have had problems in the capital market. All industry has had trouble in the capital market in the last couple of years . . .," though it was clear that some utilities are more able than SEPCO to market both debt and equity issues. Witness Harrison Clark, head of the corporate finance department of Johnson, Lane, Space, Smith & Co., testified in the superior court that SEPCO's financial position was currently better than in 1974 or 1975. Witness Michael Drazen, a public utility regulation consultant, testified that he saw no unreasonable difference between the operating income after taxes of $14,780,000, which SEPCO claimed it needed and the $14,609,000 figure achieved.

This discussion is adequate to show that SEPCO has failed to prove confiscation by clear evidence. The sole remaining claim is that SEPCO has been denied equal protection by the commission's application to it of an accounting or rate making method with respect to certain items, which assertedly is less beneficial to it than one recently allowed Georgia Power Company.

We are not in the rate-making business, but it is clear that those who are, namely, the commission, must be prepared to deal with each utility and its customers in a highly individualized fashion. Equal protection does not demand exact equality, in any event. As we wrote in *Ga. Power Co. v. Allied Chemical Corp.*, 233 Ga. 558, 559,

supra, rate making is a legislative function involving the making of policy. It is the *result* of a rate order, not the method used to arrive at it, which governs. Federal Power Comm. v. Hope Natural Gas Company, 320 U. S. 591, 602, supra. The result of this order, again, was favorable to SEPCO and was not confiscatory. Assuming, without deciding, that a utility has "equal protection" rights in such a matter, there is nothing before us sufficient to make out a claim of denial of equal protection.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 25, 1977 — DECIDED
JUNE 7, 1977.

*Bouhan, Williams & Levy, George W. Williams, Leamon R. Holliday, Troutman, Sanders, Lockerman & Ashmore, Tench C. Coxe,* for appellant.

*Arthur K. Bolton, Attorney General, Robert J. Castellani, Deputy Assistant Attorney General, W. Wheeler Bryan, Hunter, Houlihan, Maclean, Exley, Dunn & Connerat, Malcolm R. Maclean,* for appellees.